**Carver Dan PEAVY, Plaintiff,**

v.

**DALLAS INDEPENDENT SCHOOL DISTRICT and Sandy Kress, Defendants.**

No. Civ.A.3:97–CV–2163–L.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 31, 1999.

Michael J. Quilling, Kenneth A. Hill, Quilling, Selander, Cummiskey, Clutts & Lownds, P.C., Dallas, TX, for Plaintiff.

Robert H. Mow, Jr., Kim J. Askew, Bart Sloan, Hughes & Luce, L.L.P., Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Before the court are Defendants' Motion for Summary Judgment, filed June 16, 1998; Defendants' Brief in Support of Motion for Summary Judgment, filed June 16, 1998; Plaintiff's Response to Defendants' Motion for Summary Judgment, filed July 6, 1998; Plaintiff's Brief in Support of Response to Defendants' Motion for Summary Judgment, filed July 6, 1998; and Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, filed July 21, 1998. After careful consideration of the motion, response, reply, evidence, and the applicable law, the court, for the reasons that follow, grants Defendants' Motion for Summary Judgment.

## I. Procedural and Factual Background

Peavy filed this action on September 3, 1997, against Dallas Independent School

District ("DISD") and Sandy Kress ("Kress"), who was president of the Board of Trustees ("Board") of DISD and presided over all meetings of the Board. Peavy is a former trustee of DISD. He contends that telephone communications between him and another individual were illegally intercepted and recorded. A transcript of these communications was read into the record and discussed at a DISD Board meeting on September 28, 1995, and they were subsequently disclosed to members of the media. Peavy contends that DISD and Kress violated his rights under the federal Wiretap Act, 18 U.S.C. § 2510 et seq., by (a) refusing to stop the reading of the transcript and allowing it to be read into the record and discussed at the Board meeting and (b) disclosing the transcript to members of the media and others at a subsequent time. By order dated December 29, 1997, the court dismissed with prejudice Peavy's claim against DISD for violating the federal Wiretap Act, (hereafter referred to as "the Act").

Plaintiff also contends that Defendants violated his constitutional right to privacy by allowing the transcript to be read into the record and discussed at a Board meeting on September 28, 1995 and by disclosing it to the media and others on September 29, 1995. Peavy seeks relief pursuant to 42 U.S.C. § 1983.[1]

Defendants contend that no violation of the Act occurred, that they have not caused Plaintiff to be deprived of any federally protected constitutional or statutory right and that Plaintiff has suffered no damages as a result of their actions. Kress also contends that he is entitled to qualified immunity. Defendants have moved for summary judgment on all claims raised by Plaintiff.

On Thursday afternoon, September 28, 1995, an anonymous person delivered to at least three DISD trustees, Kathlyn Gilliam, Yvonne Ewell, and Jose Plata, copies of an audio tape (the "Tape") of an intercepted conversation(s) between Peavy and another individual. DISD staff transcribed the Tape. Although the conversation is primarily between Peavy and an individual, the transcript reveals that several other individuals were parties to a portion of the conversation(s). Later that same day (evening), during the "report" period of the regularly scheduled Board meeting, trustees Gilliam and Ewell read the transcript into the record of the Board meeting.[2] The "report" period of a meeting is when Board members discuss or report on events or matters of interest or concern taking place in their respective districts. Peavy did not attend the meeting on September 28, 1995. Defendants did not prevent Peavy from attending the meeting. Kress did not stop, or attempt to stop, Ewell and Gilliam from reading the transcript into the record. Peavy, who had been a trustee for over seven years, resigned on October 5, 1995.[3]

1. Peavy also contends that his right to due process was violated. *See* Plaintiff's Response to Defendants' Motion for Summary Judgment at 16–18, and Plaintiff's Brief in Support of Response to Defendants' Motion for Summary Judgment at 7–8, 19–20, 22. The court has carefully reviewed Plaintiff's Original Complaint and finds that Plaintiff has not pleaded or even mentioned a due process violation. Accordingly, this claim is not properly before the court and will not be addressed or considered in any aspect.

2. The court will not repeat the language contained in the Tape, as repetition serves no purpose; however, Peavy used a number of racial slurs and epithets and highly offensive and demeaning language in reference to African Americans, fellow trustees and candidates seeking to become trustees. For those who have the insatiable desire to read the language used, the entire transcript is contained in *Peavy v. New Times, Inc.*, 976 F.Supp. 532 (N.D.Tex.1997).

3. The court states only those facts which are necessary for the resolution of the summary judgment motion. Most of the necessary facts are really not in dispute. The facts stated for disposition of this motion are stated in the light most favorable to Plaintiff Peavy; however, undisputed or disputed facts which are immaterial or irrelevant will not be considered by the court. Many facts that are set forth in the summary judgment evidence are

## II. Analysis

### A. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas*, 136 F.3d at 458.

▮ Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871,

115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support Plaintiff's opposition to Defendants' motion. *Id.*, *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

### B. *Plaintiff's Wiretap Claims*

Peavy contends that Kress violated 18 U.S.C. § 2510 et seq., the federal Wiretap Act, and is therefore liable to him for damages. Kress contends that he did not use or disclose the contents of the Tape or transcript, had no intent to use or disclose the contents of the Tape or transcript, and had no knowledge or reason to know that the Tape was illegally obtained.

▮ For purposes of this action, the Wiretap Act provides in pertinent part a civil remedy against any person who:

(c) intentionally discloses, or endeavors to disclose, to any other person the con-

about as material and relevant as stating that the City of Dallas has over one million people. This is certainly true, but it is not relevant or material to the issues presented by Defendants' Motion for Summary Judgment. Statements which merely express beliefs, con-

jectures, opinions, conclusions, arguments or assumptions will not be considered by the court. For example, a person's subjective belief or opinion regarding a matter or event is of no moment and is not competent summary judgment evidence.

tents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; [or]

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection.

18 U.S.C. § 2511(1)(c) and (d). To prevail on a "disclosure or use" claim under the Act, Peavy must establish that the disclosure or use "was intentional, that the information obtained was obtained from an intercepted communication, and that the defendant knew or should have known that the interception was illegal." *Forsyth v. Barr*, 19 F.3d 1527, 1538 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). Under this standard, Peavy must not only establish that Kress knew he was disclosing or using information from an intercepted communication but also that Kress knew that neither party to the intercepted communication had consented to its interception, *Id.* at 1538, thereby making it illegal.

■ For the purposes of this analysis, the court assumes that the Tape was obtained by means of an unlawful interception. The court has pored over the entire summary judgment record and finds that the record is totally devoid of any *competent* summary judgment evidence that Kress knew or should have known that the Tape was the result of an illegal interception, or that Kress knew that neither party to the intercepted conversation had consented to its interception. Although Peavy talked to Kress prior to the meeting on September 28, 1995 concerning the Tape, Peavy never told Kress or anyone at DISD that the Tape was illegally obtained, or that he thought it to have been illegally obtained, until he filed this action on September 3, 1997. Peavy acknowledges that he did not know whether Kress knew that the Tape was illegally obtained. Also, at the time of the meeting on September 28, 1995, nothing in the record indicates that Peavy himself knew that the Tape was illegally obtained. Peavy sets forth the following set of facts, which he contends "clearly demonstrate" that Kress knew, or had reason to know, that the Tape was illegally made:

Kress initially learned about the content of the Tape and Transcript from [Robert] Johnston and learned more about them from [Hollis] Brashear.

Johnston says there is no way the Plaintiff would have consented to being recorded saying such things and that the other party would not have consented either. [Robby] Collins immediately came to the same conclusions. Any reasonable person would.

The Tape was delivered anonymously and Kress knew that it was; [Jose] Plata says that should and did raise red flags to him about the circumstances under which the Tape was made.

The Plaintiff told Kress that he knew nothing about any tapes, which clearly meant he had not consented to nor had he made the Tape.

The Plaintiff was an astute politician and had *never* been heard by anyone, including Kress, to use racially derogatory comments in any public setting.

Johnston admits the conversation had to have been private. Collins says the same thing. Any reasonable person would know the conversation was private. Kress certainly should have since he had similar racially derogatory private conversations with Plaintiff.

Plaintiff's Brief in Support of Response to Defendant's Motion for Summary Judgment at 15–16. Contrary to Peavy's assertions, a reasonable person would not have known or had reason to know the manner in which the Tape was received established that neither party to the conversation consented to its recording. That the Tape

contained derogatory, racist, sexist, and foul remarks made in private is of no moment. In the real world, recordings of confidential, secret, or private conversations frequently are made by one party without the other party's knowledge and consent, and such a recording is perfectly permissible insofar as the Act and laws of the State of Texas are concerned. Indeed, the note that accompanied the Tape stated that it contained "parts of a conversation that I had with Dan Peavy, DISD Board Member...." A reasonable person would conclude that the sender of the note was a party to the conversation and consented to and made the recording of the conversation, or allowed a third party to record the conversation.

That Plaintiff was an astute politician, that Plaintiff never used racially derogatory statements in any public setting, that Kress had racially derogatory private conversations with Peavy, and that Peavy knew nothing about the Tape simply do not carry the day for Plaintiff. Plaintiff confuses "private," "secret" and "confidential" with "illegal." That a communication is private, secret, or confidential does not make it illegal. In this context, Plaintiff must establish that the contents of the conversation were illegally intercepted and that Kress knew or had reason to know that the contents of the conversation were illegally obtained. At best, Plaintiff has a subjective belief, suspicion, or assumption that Kress knew or should have known that the tape was obtained illegally in violation of the Act. Such belief, opinion, suspicion, or assumption, without specific competent summary judgment evidence, is too slender a reed for a reasonable jury to make a finding of liability against Kress. There is no genuine issue of material fact regarding this claim, and Kress is entitled to judgment as a matter of law on Plaintiff's Wiretap Act claim.

## C. *Plaintiff's Claim under 42 U.S.C. § 1983*

Peavy brings suit pursuant to 42 U.S.C. § 1983 for violation of his constitutional right to privacy. Although Plaintiff's Original Complaint does not specify the Amendment to the Constitution that serves as a basis for this right of privacy, the court assumes that Peavy desires to state a claim under the Fourth Amendment to the United States Constitution. Defendants contend that Peavy has no constitutional right of privacy based on the facts presented in this action. The court agrees.

The overriding purpose of the Fourth Amendment is to protect the privacy interests of citizens against arbitrary or unwarranted intrusion or interference by the government or its officials. *U.S. v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975); *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The right of privacy embodied in the Fourth Amendment is enforceable against the states by way of the due process clause of the Fourteenth Amendment. *Berger v. New York*, 388 U.S. 41, 53, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). In this case, there is no government action or interference. The summary judgment evidence does not establish that either the state or its agents were involved in the illegal interception and recording of Peavy's conversation. Based on other litigation, *see Peavy v. Harman, et al.*, 37 F.Supp.2d 495 (N.D.Tex.1999), of which the court takes judicial notice pursuant to Fed.R.Evid. 201, it is undisputed that Peavy's conversation was illegally intercepted, recorded and used by his neighbor, Charles Harman, not the state or its agents. In essence, the illegal activity solely involved private citizens, and the court is not aware of any case which has held that there is a federal constitutional right to privacy among private citizens. Indeed, the one case located on this issue supports the court's position on this matter. *See Menda Biton v. Menda*, 812 F.Supp. 283, 285 (D.Puerto Rico 1993).

Plaintiff, however, contends that Kress and DISD are liable for use or disclosure

of the Tape because Kress and DISD did not stop the reading of the transcript of the Tape into the record, allowed the Tape to be discussed at the meeting, and subsequently disclosed the transcript to the media and others in violation of the Texas Open Meetings and Record Acts.[4] Tex. Gov't Code Ann. Chs. 551 and 552 (Vernon 1994). This reasoning is seriously flawed, as there clearly was no state action with respect to the illegal interception and recording. By way of illustration, the court sets forth the following hypothetical situation:

> Assume that an individual burglarized Plaintiff's home—a clear invasion of his privacy and an illegal act—and found several writings which contained the same subject matter as was on the Tape or some other writing that Plaintiff intended to be private and confidential. Neither DISD nor Kress is aware of the burglar's illegal conduct. The burglar then appears at a meeting of DISD, distributes copies of the writings to trustees and the public, and states at the meeting during the public comment portion that a person with such views should not serve as a trustee of the DISD Board. A brief discussion takes place by trustees regarding these illegally obtained writings, and official action by the trustees is postponed to a future date.

**4.** The court has carefully examined Plaintiff's Original Complaint, Plaintiff's Response to Defendants' Motion for Summary Judgment, and Plaintiff's Brief in Support of Response to Defendants' Motion for Summary Judgment. Plaintiff does not specify the provision of the Texas Open Records Act which Defendants allegedly violated. Since Plaintiff failed to list the specific provision that allegedly was violated, the court will not address this contention in its opinion.

Plaintiff also contends that Kress had an affirmative duty to act to prevent a violation of his alleged constitutional right to privacy. Peavy's reliance on *Hale v. Townley,* 45 F.3d 914, 919 (5th Cir.1995) and *Doe v. Taylor Independent School District,* 15 F.3d 443, 452–53 (5th Cir.), *cert. denied,* 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994), is mis-

Under this set of facts, no one would seriously contend that DISD or its presiding officer would be liable to Plaintiff for violation of his right to privacy under the United States Constitution because of the underlying illegal activity of the burglar. This is precisely the situation we have here. There was no state action by DISD or Kress regarding the illegal interception and recording, or knowledge on DISD's or Kress' part of the underlying illegal activity. The court finds that the Fourth Amendment to the United States Constitution does not, based upon the facts of this case, provide a remedy for Peavy.

### D. Qualified Immunity

Defendant Kress contends that he is entitled to qualified immunity for the alleged violation of the Act and the alleged constitutional violation. Plaintiff contends that Kress is not entitled to the qualified immunity defense and specifically states that Kress provides no authority for applying the qualified immunity defense to his claims under the Act. Peavy also contends that Kress has "completely failed to carry his initial summary judgment burden" regarding qualified immunity. The court disagrees.

 Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not

placed. *Doe* involved the sexual abuse of a student and whether a supervisory official had a duty to protect her when a subordinate violated her constitutional rights. The court held that a school official has a duty not to be deliberately indifferent to the constitutional rights of a student. *Id.* at 454. In *Hale,* the court held, pursuant to longstanding Fifth Circuit precedent, that a police officer had a duty not to acquiesce in another officer's use of excessive force by refusing to take measures to stop the use of such excessive force. As the facts of this case do not establish that Kress acted with deliberate indifference in regard to Peavy's constitutional rights or that Kress acquiesced in any conduct to violate Peavy's constitutional rights, both *Hale* and *Doe* are inapplicable to this case.

violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Based on the unequivocal language in *Harlow,* the defense of qualified immunity is not only available for alleged violations of constitutional law but also available for alleged violations of federal statutory law. Moreover, no language in the Act suggests that the defense of qualified immunity is not available to a civil defendant for an alleged violation of one of its provisions. The court therefore concludes as a matter of law that a defendant is entitled to assert the defense of qualified immunity for an alleged violation of the Wiretap Act.

 A defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Kress has pleaded this defense. In deciding a motion for summary judgment that raises the defense of qualified immunity, the court must *first* decide "whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert,* —— U.S. ——, ——, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999), citing *Siegert v. Gilley,* 500 U.S. 226, 232–33, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *see also Kerr v. Lyford,* 171 F.3d 330, 339 (5th Cir.1999). The second prong of the test requires the court to make two separate inquiries: whether the right allegedly violated was clearly established at the time of the event giving rise to the plaintiff's claim, and if so, whether the conduct of the defendant was objectively unreasonable. *Evans v. Ball,* 168 F.3d 856, 860 (5th Cir.1999); *Hare v. City of Corinth, Miss.,* 135 F.3d 320, 326 (5th Cir.1998). Although many courts state that the determination of the qualified immunity issue requires the application of a bifurcated test, the analytical framework for resolving issues of qualified

immunity necessarily requires, or may require, a *three-step* analysis. *See Kerr v. Lyford,* 171 F.3d 330, 339 (5th Cir.1999); *Evans v. Ball,* 168 F.3d at 860; *Hare v. City of Corinth, Miss.,* 135 F.3d at 321; *Eugene v. Alief Independent School District* 65 F.3d 1299, 1305 (5th Cir.1995).

 Whether a defendant acted within the scope of his authority performing a discretionary function and whether a reasonable official in his position would have deemed his conduct unconstitutional are not to be considered by the court unless each part of the three-step inquiry has been answered affirmatively on behalf of the plaintiff. *Kerr v. Lyford,* 171 F.3d at 339. In other words, only after a plaintiff demonstrates the existence and violation of a clearly established constitutional or statutory right is the defendant required to show that he was performing a discretionary function and that a reasonable official would not have considered his actions to be unconstitutional at the time of the incident in question. *Id.* at 338.

 A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Foster v. City of Lake Jackson,* 28 F.3d 425, 429 (5th Cir.1994). Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law. *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. 3034; *Stefanoff v. Hays County, Tex.,* 154 F.3d 523, 525 (5 th Cir.1998); and *Pierce v. Smith,* 117 F.3d 866, 871 (5th Cir.1997).

 In *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court refined the qualified immunity standard and held that

the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether an action is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir.1995), *citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994). Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Foster v. City of Lake Jackson*, 28 F.3d at 429. To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson v. Creighton*, 483 U.S. at 640, 107 S.Ct. 3034; however, for an official to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce v. Smith*, 117 F.3d at 882; *Stefanoff v. Hays County, Tex.*, 154 F.3d at 525.

### 1. Alleged Violation of a Constitutional or Statutory Right

The court must first decide whether Peavy has alleged the violation of a constitutional or statutory right. With respect to Plaintiff's claim under the federal Wire-

tap Act, the court finds that Peavy has alleged the violation of a right protected by a federal statute. With respect to Peavy's invasion of privacy claim under the Fourth Amendment, the court finds that the allegations as stated by Peavy do not allege the violation of an actual constitutional right at all with respect to his Fourth Amendment claim. *See Section II C, supra.*

### 2. Clearly Established Right

 Regarding Plaintiff's claim under the Wiretap Act, the court finds that the Plaintiff has set forth facts which allege the violation of a clearly established federal statutory right, as the Wiretap Act was on the books years before September, 1995. With respect to Plaintiff's claim under the Fourth Amendment, the court further finds that, even if Plaintiff has sufficiently alleged a constitutional right for unwarranted intrusion by Kress, the right was not clearly established as of September 28, 1995. Nothing was apparent to Kress, in light of clearly established law and the information he possessed on September 28, 1995, that the reading and discussion of the transcript at the DISD meeting and its subsequent release to the members of the media would violate Plaintiff's right under the Fourth Amendment to be free from arbitrary or unwarranted intrusion by the state or an official of the state.[5]

### 3. Objective Unreasonableness

Peavy contends that Kress' conduct was unreasonable in light of clearly established law. Specifically, he contends that the unlawfulness of Kress' conduct was appar-

---

**5.** Peavy contends that his right to procedural due process before being deprived of a liberty interest under the Fourteenth Amendment as set forth in *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), was violated. This is a well-recognized right; however, Peavy has not pleaded a due process violation. The clearly established right that was allegedly violated must be pleaded. Since this right was not pleaded by Peavy, the court cannot consider it. More-

over, a liberty interest is involved only if the employee or official is discharged. *Roth*, at 573, 92 S.Ct. 2701; *Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5th Cir.1989), *aff'd on relevant grounds*, 901 F.2d 61 (en banc), *cert. denied*, 498 U.S. 855, 111 S.Ct. 153, 112 L.Ed.2d 119 (1990); *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir.1993), *cert. denied*, 510 U.S. 1072, 114 S.Ct. 881, 127 L.Ed.2d 76 (1994). Peavy was not discharged or removed; he resigned from office.

ent to everyone because "[i]tems not on the agenda should not be discussed." Plaintiff's Brief in Support of Response to Defendants' Motion for Summary Judgment at 10. The court disagrees.

 Although not specifically stated, Plaintiff apparently contends that the reading and discussion of the transcript was in violation of Tex. Gov't Code Ann. Ch. 551 (Vernon 1994) (the Texas Open Meetings Act) in that the "subject" of the transcript was not listed on the agenda and that discussion of the contents of the transcript was not "limited to a proposal to place the subject on the agenda for a subsequent meeting." *See Id.* at §§ 551.041, 551.042. This argument fails as a matter of law because to be objectively unreasonable the violation must be apparent with respect to a federal law, not a state statute. *See Pierce v. Smith,* 117 F.3d at 882. Although perhaps not necessary, the court will act forth its reasons for concluding that the alleged violation of the Texas Open Meetings Act is without merit.

 The transcript was read during the "report" period of the DISD meeting, a time in which trustees are allowed to report on or discuss matters of concern or interest that take place in their respective districts. The agenda for the September 28, 1995 meeting contains a listing for "Reports of Members of the Board." Defendants' Exhibit B–1 at 519. Peavy's views on minorities and their impact on the ability of the school district to operate efficiently is a matter of public concern and interest to all trustees and the general public. The matter necessarily was one that affected and concerned each trustee. In light of DISD's long established practice of allowing trustees to make reports, the court will not selectively rule that the report should not have been made merely because it was controversial. If the court were going to rule that discussing the Peavy matter violated the Texas Open Meetings Act, it would be required to rule that a trustee could not report on *any* matter that was not specifically listed.

Moreover, the court has reviewed the record and finds that the "deliberation of or decision" regarding the Peavy matter falls within what is permitted under the Texas Open Meetings Act (Tex. Gov't Code Ann. § 551.042 (Vernon 1994)), as it was limited to what action DISD would take at some subsequent meeting. *See* Defendants' Exhibit B–2 at 445–452. That the contents of the transcript were controversial and offensive does not minimize its importance, and the court will not hold that the meeting violated the Texas Open Meetings Act.

The court also finds, for the reasons stating that no Wiretap Act violation occurred and no constitutional claim to privacy exists under the facts and circumstances of this case, as a matter of law, Kreas' conduct cannot be deemed objectively unreasonable. Stated another way, a reasonable public official could have believed that Kress' actions were lawful in light of clearly established law and the information he possessed regarding the transcript at the time it was read into the record, discussed at the meeting, and subsequently provided to members of the media. Alternatively, even if some public officials of reasonable competence could disagree whether Kress' conduct was legal, immunity should be recognized. *See Malley v. Briggs,* 475 U.S. at 341, 106 S.Ct. 1092.

Kress is therefore entitled to qualified immunity regarding Plaintiff's Wiretap Act and constitutional claims against him. There is no genuine issue of material fact, with respect to these claims, and Kress is entitled to judgment as a matter of law.

### E. *School District Liability under 42 U.S.C. § 1983*

Plaintiff contends that he suffered a deprivation of his right to privacy because of a policy or custom of the DISD. The court is unsure of the precise policy or custom of the DISD that allegedly deprived Peavy of his constitutional right to privacy. The court, for purposes of this analysis, as-

**394**

sumes that the action by Kress regarding the transcript was pursuant to a DISD policy.

 Plaintiff's a suit against Kress in his official capacity is treated as a claim against DISD, the governmental entity of which Kress is an agent or official. *See Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Brooks v. George County, Miss.,* 84 F.3d 157, 165 (5th Cir.), *cert. denied,* 519 U.S. 948, 117 S.Ct. 359, 136 L.Ed.2d 251 (1996). A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A governmental entity *cannot* be liable for civil rights violations under a theory of respondent superior or vicarious liability. *Id. See also Baskin v. Parker,* 602 F.2d 1205, 1208 (5th Cir.1979). Official policy is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [school district] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of [school district] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [school district] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [school district] or to an official to whom that body had delegated policy-making authority.

*Eugene v. Alief Independent School District,* 65 F.3d 1299, 1305 (5th Cir.1995). *Webster v. City of Houston,* 735 F.2d 838,

841 (5th Cir.1984); *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984). A plaintiff must identify the policy, connect the policy to the governmental entity itself and show that his injury was incurred because of the application of that specific policy. *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.1984), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). A plaintiff must establish that the governmental entity through its deliberate conduct was the moving force behind the injury or harm suffered and must establish a direct causal link between the governmental entity's action and the deprivation of a federally protected right. *Bryan County v. Brown,* 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

 Liability must rest on official policy, meaning the governmental entity's policy, and not the policy of an individual official. *Bennett,* 728 F.2d at 769. The official complained of must possess

... final authority to establish [school district] policy with respect to the action ordered.... The official must also be responsible for establishing final government policy respecting such activity before the [school district] can be held liable.... [W]hether an official had final policy-making authority is a question of state law.

*Pembaur v. City of Cincinnati,* 475 U.S. 469, 481–82, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Under Texas law, the final policy-making authority in an independent school district rests with the district's trustees. *Jett v. Dallas Independent School District,* 7 F.3d 1241, 1245 (5th Cir.1993). An employee, agency, or board of a governmental entity is not a policy-maker unless the governmental entity, through its lawmakers, has delegated exclusive policy-making authority to that employee agency or board and *cannot* review the action or decision of the employee, agency or board. *See St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Worsham v. City of Pasadena,* 881 F.2d 1336, 1340–41 (5th Cir.1989).

If a plaintiff fails to raise a fact issue concerning any underlying constitutional violation, the governmental entity is not liable as a matter of law. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). In other words, if a plaintiff cannot establish an underlying constitutional violation, the alleged unconstitutional policy as a matter of law cannot be the basis of governmental liability. Having set forth the applicable law concerning school district liability, the court does not find it necessary to engage in an esoteric and erudite legal analysis regarding school district liability. As the court has held that there is no underlying constitutional violation against Plaintiff regarding his right to privacy under the Fourth Amendment, the issue of an unconstitutional policy becomes totally irrelevant and cannot be the basis for the deprivation of Plaintiff's right to privacy. There is no genuine issue of material fact regarding this claim, and DISD is entitled to judgment as a matter of law.

### III. Miscellaneous Motions and Matters

The court also has before it Plaintiff's Objections to, and Motion to Strike, Defendants' Summary Judgment Evidence, filed July 20, 1998; Plaintiff's Motion to Strike New Summary Judgment Evidence (Declaration of Jose Plata), filed July 22, 1998; Plaintiff's Objections to, and Motion to Strike, Defendants' Designation of Dennis Eichelbaum as Expert Witness, filed July 31, 1999; and Defendants' Motion to Strike Plaintiff's Experts for Failure to Meet Requirements of Fed.R.Evid. 702, filed August 7, 1998. With respect to Plaintiff's Objection to, and Motion to Strike, Defendants' Summary Judgment Evidence, the court has not considered or relied on *any* evidence which is not competent summary judgment evidence. The court disregarded evidence submitted by any party which was not competent summary judgment evidence. Accordingly, the motion is denied, and Plaintiff's objections are **overruled.**

With respect to Plaintiff's Motion to Strike New Summary Judgment Evidence, the court finds that the motion is without merit. Plaintiff did not seek leave for a continuance or additional discovery pursuant to Fed.R.Civ.P. 56(e) concerning the note attached to Plata's declaration. Had Plaintiff requested additional time or sought to file a surreply in this instance, the court would have granted it. Plaintiff has not demonstrated that he has been unduly prejudiced or harmed by relevant evidence of which he was aware prior to the discovery deadline and response deadline for Defendants' Motion for Summary Judgment. For these reasons, this motion is **denied.**

With respect to Plaintiff's Objection to, and Motion to Strike, Defendants' Designation of Dennis Eichelbaum as Expert Wimess and Defendants' Motion to Strike Plaintiff's Expert for Failure to Meet Requirement of Fed.R.Evid. 702, both motions are denied as moot in light of the court's ruling on the summary judgment motion. Finally, any other matters raised by the parties and not addressed by the court were not necessary for the disposition of Defendants' Motion for Summary Judgment.

### IV. Conclusion

For the reasons stated herein, there is no genuine issue of material fact regarding Plaintiff's claims under the Wiretap Act or Fourth Amendment to the United States Constitution. Accordingly, Defendants' Motion for Summary Judgment is **granted**, and this action is dismissed with prejudice against Defendants Kress and DISD. Judgment will be entered by separate document.