The CITY OF COCKRELL HILL; Robert Lowther, Individually and as Alderman for the City of Cockrell Hill; Linda McCoy, Individually and as Alderman for the City of Cockrell Hill; Kurt Smith, Individually and as Alderman for the City of Cockrell Hill; and Leo Landin, Individually and as Mayor for the City of Cockrell Hill, Appellants,

v.

Elizabeth JOHNSON, Appellee,

Bob Johnson, Appellant,

v.

The City of Cockrell Hill; Robert Lowther, Individually and as Alderman for the City of Cockrell Hill; Linda McCoy, Individually and as Alderman for the City of Cockrell Hill; Kurt Smith, Individually and as Alderman for the City of Cockrell Hill; and Leo Landin, Individually and as Mayor for the City of Cockrell Hill, Appellees.

No. 2–00–268–CV, 2–00–338–CV.

Court of Appeals of Texas, Fort Worth.

June 7, 2001.

Remington, Jeffrey & Hansen, P.C., James T. Jeffrey, Jr., Arlington, for Appellants and Appellees.

Blaies & Hightower, L.L.P., Wesley M. Hightower, Fort Worth, for Appellee and Appellant.

Panel B: DAY, DAUPHINOT, and HOLMAN, JJ.

## OPINION

DAUPHINOT, Justice.

### I. Introduction

In this whistleblower case, the City of Cockrell Hill, Aldermen Robert Lowther, Linda McCoy, and Kurt Smith, and Mayor Leo Landin appeal from the trial court's denial of their plea to the jurisdiction and motion for summary judgment as to Elizabeth Johnson's whistleblower claims. In addition, Bob Johnson appeals from the trial court's granting of the City, Aldermen, and Mayor's plea to the jurisdiction and motion for summary judgment on his whistleblower and libel and slander claims. We reverse and render in part and affirm in part.

### II. Background Facts

The City, a type-A general law municipality, is governed by five aldermen and a mayor, who are each elected to two-year terms. The City does not pay or provide any compensation to its aldermen or mayor.

Bob and Elizabeth Johnson were both appointed as reserve, unpaid police officers for the City in February 1994. In August 1994, Bob was employed by the City as a police officer. He served in various capacities and was appointed chief of police in February 1995. In January 1996, Elizabeth was hired as a full-time warrant officer. She was promoted to the position of criminal investigative detective in March 1996.

In September 1997, some of the City's police officers were dispatched to Kurt Smith's personal residence in response to a family disturbance call. At the residence, the officers found Smith, his live-in girlfriend, Teresa Upchurch, and her daughter, Jennifer Gillaspy. The three had been engaged in some type of physical altercation, and citations for class C misdemeanor assault were issued.

At the time the citations were issued, Smith was serving as an alderman for the City. Robert Lowther and Linda McCoy were also aldermen, and Leo Landin was mayor for the City.

Thereafter, under Bob's supervision, Elizabeth withdrew the class C misdemeanor charges against Smith pending further investigation. She then conducted additional investigation into the September 1997 incident in an effort to determine whether the class C misdemeanor charges against Smith should be elevated to a class A misdemeanor assault charge. Elizabeth reported the results of her investigation to the Dallas County District Attorney's Office, and class A misdemeanor charges were filed against Smith.

On November 3, 1997, the city council removed Bob from his position as chief of police via a no-confidence city resolution and terminated his employment. Officer Charles Bennett was appointed as acting chief of police. On November 12, 1997, Bennett placed Elizabeth on indefinite suspension without pay. Elizabeth appealed the suspension, but the City upheld Bennett's decision and, on December 16, reassigned her to the position of police dispatcher. Elizabeth was terminated from her employment with the City's police department on January 13, 1998.

Bob and Elizabeth sued the City, Aldermen, and Mayor for violations of the Texas Whistleblower Act (the Act).[1] They also sued Lowther, Smith, and Landin for libel and slander. The City, Aldermen, and Mayor filed a plea to the jurisdiction and

---

1. TEX. GOV'T CODE ANN. §§ 554.001–.010 (Vernon 1994 & Supp.2001).

moved for summary judgment on all of Bob's and Elizabeth's claims. After a hearing, the trial court ruled in favor of the City, Aldermen, and Mayor on all of Bob's claims and on Elizabeth's libel and slander claims. The trial court denied the plea to the jurisdiction and motion for summary judgment as to Elizabeth's whistleblower claims. The trial court also severed Bob's claims against the City, Aldermen, and Mayor into a separate suit so that the summary judgment on all of Bob's claims would be final for purposes of appeal.

### III. The City, Aldermen, and Mayor's Appeal

On appeal, the City, Aldermen, and Mayor contend the City's immunity from suit has not been waived under the Whistleblower Act as to Elizabeth's claims because (1) she did not report a violation of law committed by another public employee, and (2) she did not report a violation of law committed by an employing governmental entity. The Aldermen and Mayor further contend they are immune from suit on Elizabeth's claims against them individually because the Act does not provide Elizabeth a private cause of action against them in their individual capacities.

#### A. Jurisdiction

Elizabeth asserts that we lack jurisdiction over this appeal. She contends there is no right of interlocutory appeal from the trial court's denial of the motion for summary judgment because her suit does not raise claims to which a defense of official immunity can be asserted.

This is not an official immunity appeal, however. Official immunity is an affirmative defense to claims against governmental officials sued in their individual capacities.[2] Interlocutory review is available to both the individual and his employer seeking summary judgment based on the doctrine of official immunity.[3]

Elizabeth asserts she has sued the Aldermen and the Mayor only in their official capacities, not in their individual capacities. We note that the plaintiffs' first amended petition complains of two Aldermen (Lowther and Smith) and the Mayor (Landin) in both their individual and official capacities. Based on Elizabeth's statement in her brief that she has not sued Lowther, Smith, or Landin in their individual capacities, we conclude Elizabeth has abandoned whatever claims she may have asserted against these persons individually. Because Elizabeth does not assert any claims against the Aldermen or the Mayor individually, the official immunity defense is not at issue.

Further, the City, Aldermen, and Mayor filed a plea to the jurisdiction and moved for summary judgment based on sovereign immunity, which is distinct from official immunity. A suit against an official in his official capacity is not a suit against the official but a suit against the official's office and the state for which the official is an agent.[4] The suit is therefore the same as one brought directly against

2. *City of Houston v. Kilburn*, 849 S.W.2d 810, 812 n. 1 (Tex.1993); *see also City of Lancaster v. Chambers*, 883 S.W.2d 650, 653–54 (Tex. 1994); *Putthoff v. Ancrum*, 934 S.W.2d 164, 168 (Tex.App.—Fort Worth 1996, writ denied).

3. *City of Beverly Hills v. Guevara*, 904 S.W.2d 655, 656 (Tex.1995); *Putthoff*, 934 S.W.2d at 174 n. 2. *Compare Kilburn*, 849 S.W.2d at 812 (holding that city could not appeal based on *sovereign*, rather than official, immunity under section 51.014(5)).

4. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *Scott v. Britton*, 16 S.W.3d 173, 180 (Tex.App.—Houston [1st Dist.] 2000, no pet.).

the state.[5] The Texas Supreme Court has long recognized that sovereign immunity, unless waived, protects the State of Texas, its agencies, and its officials from lawsuits for damages, absent legislative consent to sue.[6]

■■■ The trial court denied the plea to the jurisdiction and motion for summary judgment as it pertained to Elizabeth's whistleblower claims. Interlocutory appeal is available from an order denying a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision.[7] The application of section 51.014(a)(5) does not depend on whether a person is sued in his individual or official capacity.[8] Interlocutory appeal is also available from an order that grants or denies a plea to the jurisdiction by a governmental unit, including a city.[9]

Because the City, Aldermen, and Mayor's interlocutory appeal is authorized under the civil practice and remedies code, we have jurisdiction over the appeal.

## B. Sovereign Immunity

The Act provides that a state or local governmental entity may not suspend or terminate the employment of a public employee who in good faith reports a violation of the law by the employing governmental entity or another public employee to an appropriate law enforcement agency.[10] The Act waives state and local governmental entities' immunity from suits seeking redress for retaliation against public employees whose whistleblowing complies with section 554.002(a).[11]

### 1. Standards of Review

We review a trial court's ruling on a plea to the jurisdiction under a de novo standard of review.[12] In determining whether jurisdiction exists, we look to the allegations in the pleadings, accept them as true, and construe them in favor of the pleader.[13] We also consider evidence relevant to the jurisdictional issue that was before the trial court when it ruled on the plea.[14]

A defendant is entitled to summary judgment on an affirmative defense if the

5. *Will,* 491 U.S. at 71, 109 S.Ct. at 2312; *Scott,* 16 S.W.3d at 180.

6. *Denton County v. Howard,* 22 S.W.3d 113, 117 (Tex.App.—Fort Worth 2000, no pet.) (citing *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997)).

7. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(5) (Vernon Supp.2001).

8. *Brooks v. Scherler,* 859 S.W.2d 586, 588 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Boozier v. Hambrick,* 846 S.W.2d 593, 596 (Tex.App.—Houston [1st Dist.] 1993, no writ).

9. Tex. Civ. Prac. & Rem.Code Ann. §§ 51.014(a)(8), 101.001(3)(B) (Vernon Supp. 2001).

10. Tex. Gov't Code Ann. § 554.002(a) (Vernon Supp.2001).

11. *Id.* § 554.0035 (Vernon Supp.2001); *Tarrant County v. Bivins,* 936 S.W.2d 419, 421 (Tex.App.—Fort Worth 1996, no writ).

12. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998), *cert. denied,* 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999).

13. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993); *City of Saginaw v. Carter,* 996 S.W.2d 1, 2–3 (Tex.App.—Fort Worth 1999, pet. dism'd w.o.j.).

14. *See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex.2000) ("[A] court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. The court should, of course, confine itself to the evidence relevant to the jurisdictional issue.").

defendant conclusively proves all the elements of the affirmative defense.[15] To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.[16] Questions of law, such as sovereign immunity, are appropriate matters for summary judgment.[17]

The City, Aldermen, and Mayor contend that Elizabeth has not alleged a cause of action under the Act because she has not pleaded that she reported a violation of law committed by "another public employee" or by an "employing governmental entity." Elizabeth alleged in her petition that the City, Aldermen, and Mayor suspended and then terminated her employment with the City as a result of her good faith report to the Dallas County District Attorney's office that Smith had violated the law. Elizabeth does not plead that Smith is an employing governmental entity or another public employee, as required by section 554.002(a). She does, however, allege that Smith is an alderman for the City. The City, Aldermen, and Mayor assert that Smith is not a public employee and could not have been considered an employing governmental entity at the time he was involved in a family altercation at his home.

## 2. Public Employee

■ The Act defines a public employee as an employee or appointed officer who is paid to perform services for a state or local governmental entity.[18] A local governmental entity includes a municipality.[19] The City, Aldermen, and Mayor contend that Smith is not a public employee under the Act because he was elected, not appointed, and was not paid to perform services for the City as either an employee or an elected official.

The Texas Supreme Court has concluded, under circumstances similar to those here, that an unpaid volunteer reserve deputy sheriff was not an employee under the Texas Tort Claims Act.[20] The Tort Claims Act contains a definition of "employee" similar to the Act's definition of "public employee": "a person, including an officer or agent, who is in the paid service of a governmental unit." [21] Because the reserve sheriff's deputy was not in the paid service of Harris County at the time the events giving rise to the plaintiff's claim occurred, the supreme court concluded the deputy was not an employee for purposes of the Tort Claims Act.[22] We believe this ruling applies to Elizabeth's situation, as well, because Smith was not in the paid service of the City at the time he committed the alleged legal violations.

■ Further, in construing a statute, our objective is to determine and give effect to the Legislature's intent.[23] We look at the statute's common meaning and presume that the Legislature intended the plain meaning of its words.[24]

**15.** *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex. 1999).

**16.** *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996).

**17.** *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222 (Tex.1999).

**18.** TEX. GOV'T CODE ANN. § 554.001(4).

**19.** *Id.* § 554.001(2)(B).

**20.** *Harris County v. Dillard,* 883 S.W.2d 166, 167 (Tex.1994).

**21.** TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(2).

**22.** *Dillard,* 883 S.W.2d at 167.

**23.** *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000).

In section 554.001(4), the Legislature limited the definition of a public employee to someone who is *paid* to perform services for a local governmental entity. The ordinary meaning of the term "pay" or "paid" is to compensate or give something in return for goods or services.[25] Smith was not paid to perform any services for the City. Also, he received no compensation, wages, or salary from the City for the performance of his duties as an alderman. Thus, applying the plain meaning of the words used, Smith was not a public employee under the Act's definition of that term.

Elizabeth does not assert that Smith was paid for his services as an alderman. Instead, she contends that holding she is not protected by the Act because Smith was never compensated for his services as an elected city representative would contravene the Act's purposes of protecting public employees from retaliation by their employers and securing lawful conduct on the part of those who direct public affairs.[26] The supreme court considered and rejected a similar argument in *Dillard* because it would have required an extension of the definition of employer beyond what was stated in the Tort Claims Act.[27] Likewise, a holding that Smith is an employee here would require us to extend the meaning of employee beyond the unambiguous terms used in section 554.001. This we cannot do because, as the supreme court has repeatedly held, the extent of a waiver of governmental immunity is a matter for the Legislature to decide.[28]

Because Smith was not paid to perform any services for the City, he was not a public employee under the Act.

### 3. Employing Governmental Entity

■ Elizabeth also contends that she has alleged a cause of action under the Act because Smith was part of the employing governmental entity, the City. Elizabeth's pleadings and the evidence show that the City was Elizabeth's employer. The City is governed by five aldermen and a mayor. The City operates its police department through the chief of police, who reports directly to the city council. As an alderman, Smith was entitled to vote on all matters that came before the city council, including matters concerning Elizabeth's continued employment for the police department.

Elizabeth contends that the individuals who govern the City, e.g., Smith, are the equivalent of the "employing governmental

24. *Id.; see also* Tex. Gov't Code Ann. § 311.011(a) (Vernon 1998) (providing words and phrases shall be read in context and construed according to the rules of grammar and common usage); *Id.* § 312.002(a) (providing that words in statutes shall be given their ordinary meaning).

25. Webster's New International Dictionary 1620, 1659 (3d ed.1981).

26. *See Bivins*, 936 S.W.2d at 421 (noting that the Act's purposes are (1) to protect public employees from retaliation by their employer when, in good faith, employees report a violation of law, and (2) to secure lawful conduct

on the part of those who direct and conduct the affairs of public bodies).

27. *Dillard*, 883 S.W.2d at 168 (rejecting argument that governmental entities *should* be liable for persons who act on entities' behalf without compensation).

28. *Id.; see also Fed. Sign*, 951 S.W.2d at 405 (holding that legislative consent to suit must be by clear and unambiguous language, in either a statute or by other express legislative permission); *Tarrant County Hosp. Dist. v. Henry*, No. 2–00–101–CV, slip op. at 5, 2001 WL 839016, at *2 (Tex.App.—Fort Worth July 26, 2001, no pet. h.) (same).

entity" as that term is used in section 554.002(a). To support her position, she relies on *Tarrant County v. Bivins*[29] and *Wichita County v. Hart*.[30] These cases only hold, however, that a sheriff is part of a county when acting in an official capacity.[31]

Applying *Bivins* and *Hart* to this case, Smith would be part of the City's government under the Act if he (1) committed a violation of the law in his official capacity as an alderman; or (2) took adverse employment actions against Elizabeth in retaliation for her good faith report of legal violations by a City employee, a City official acting in his or her official capacity, or by the City itself. Thus, Smith was part of the City when, as an alderman, he participated in the adverse personnel actions against Smith. However, those adverse personnel actions were not proscribed by the Act unless Smith was part of the City when he committed the alleged legal violations.[32]

There is no allegation or evidence that Smith committed any violation of the law in his official capacity as alderman. Elizabeth's pleadings and the evidence show: Smith and his live-in girlfriend, Teresa Upchurch, were charged by the City's police department with class C misdemeanors for assaulting Teresa's daughter, Jennifer Gillaspy, at Smith's home. After Elizabeth investigated the incident further in the course of her duties, she and Bob determined that the charges against Smith should be upgraded to a class A misde-

meanor. Elizabeth and Bob also investigated other suspected criminal activity involving Smith and Upchurch, and they contacted the Dallas County District Attorney's office regarding both the alleged assault and the other criminal activity.

Bob testified that the "other criminal activity" was Smith's alleged molestation of his stepson and his illegal drug dealing. Elizabeth testified that she asked the Dallas County Sheriff's Department to investigate Smith's ex-wife's allegations that Smith had sexually assaulted their son, and that she reported to the Dallas County District Attorney's office information she had received about Smith's alleged use and sale of narcotics.

Because Smith committed the alleged legal violations in his individual capacity, neither *Bivins* nor *Hart* speaks directly to the issue before us, which is: If an elected official and the employing governmental entity are the same unit when the official is acting in his official capacity, is the official also part of the employing governmental entity when he is not acting in his official capacity?

Elizabeth has not directed us to any cases, and our research has not revealed any, in which a court has held that an elected official is part of the employing governmental entity when he is acting in his private, rather than official, capacity. Instead, the cases to which the Act has been applied have involved legal violations

---

29. 936 S.W.2d at 419.

30. 892 S.W.2d 912 (Tex.App.—Austin 1994), *rev'd on other grounds*, 917 S.W.2d 779 (Tex. 1996).

31. *Bivins*, 936 S.W.2d at 421–22 (county sheriff allegedly took adverse employment action against county employee who, in good faith, reported legal violation); *Hart*, 892 S.W.2d at

929 (county sheriff fired county employees who, in good faith, reported sheriff's questionable actions made in his official capacity).

32. *See* TEX. GOV'T CODE ANN. § 554.002(a) (prohibiting local governmental entity from taking adverse employment action against public employee who reports legal violation *by employing governmental entity* ).

committed by an official in the scope of the official's duties, or by a public employee.[33]

■ In addition, legislative consent to suit must be by clear and unambiguous language.[34] There is nothing in the plain language of the Act that would indicate clear legislative intent to waive sovereign immunity from suit based on the private acts of elected officials. The Act's provisions are exclusive, and courts may not add to them.[35] Accordingly, we decline to extend the rule set forth in *Bivins* and *Hart* by holding that an elected official is considered part of the local governmental entity at all times, even when he is not acting in his official capacity, simply by virtue of his official position.

■ We believe our decision on this issue is in keeping with the Act's remedial purpose of securing lawful conduct on the part of those who direct and conduct the affairs of public bodies.[36] To achieve this purpose, the Act is directed toward public employers' violations of the law that are detrimental to *the public good or society in general*.[37] The legal violations Smith is alleged to have committed in his personal capacity do not relate to the affairs of the City itself. In addition, they were detrimental primarily to the individuals involved, not to society in general. In short, they are not things the public would be concerned about simply because of Smith's status as an elected official.

Further, if we were to adopt the construction of the statute that Elizabeth urges, a governmental official and the governmental entity would always be one and the same. Such a rule could result in a very broad waiver of sovereign immunity and subject governmental entities to liability for *all* the acts of their public officials, whether or not committed under the color of public office. Apart from clear and unambiguous legislative consent to such a rule,[38] which is absent here, we cannot adopt Elizabeth's position.

To sum up, Smith was part of the City's government when he took adverse employment actions against Elizabeth because he was acting in his official capacity as an alderman. However, there is no allegation or evidence that he acted in his official capacity with regard to the alleged assault, sexual assault, or drug-related activities. Thus, he was not part of the City's government when he committed the alleged legal violations that Elizabeth reported. Because Smith was not a public employee and was not part of the employing governmental entity when he committed the alleged legal violations, Elizabeth's good faith re-

---

**33.** *See, e.g., City of Fort Worth v. Zimlich*, 975 S.W.2d 399, 403 (Tex.App.—Austin 1998) (obstruction of criminal investigation), *rev'd on other grounds*, 29 S.W.3d 62 (Tex.2000); *Castaneda v. Tex. Dep't of Ag.*, 831 S.W.2d 501, 502–03 (Tex.App.—Corpus Christi 1992, writ denied) (misuse of state property and funds); *Johnston v. Del Mar Distrib. Co.*, 776 S.W.2d 768, 769 (Tex.App.—Corpus Christi 1989, writ denied) (violation of firearm regulations); *City of Ingleside v. Kneuper*, 768 S.W.2d 451, 453 (Tex.App.—Austin 1989, writ denied) (criminal activity in connection with building inspections); *Travis County v. Colunga*, 753 S.W.2d 716, 717 (Tex.App.—Austin 1988, writ denied) (misuse of hazardous chemicals); *City of Brownsville v. Pena*, 716 S.W.2d 677, 679 (Tex.App.—Corpus Christi 1986, no writ) (misuse of public property and funds).

**34.** *Fed. Sign*, 951 S.W.2d at 405.

**35.** *City of San Antonio v. Heim*, 932 S.W.2d 287, 290 (Tex.App.—Austin 1996, writ denied) (op. on reh'g).

**36.** *Bivins*, 936 S.W.2d at 421; *Colunga*, 753 S.W.2d at 718–19.

**37.** *Stinnett v. Williamson County Sheriff's Dep't*, 858 S.W.2d 573, 575 (Tex.App.—Austin 1993, writ denied).

**38.** *Fed. Sign*, 951 S.W.2d at 405.

port of Smith's alleged actions is not protected under the Act. Thus, the Legislature has not waived the City's sovereign immunity from suit as to Elizabeth's claims.

■ Elizabeth contends the Aldermen and Mayor cannot both assert the defense of sovereign immunity and contend that Smith is not part of the employing governmental entity. These two positions are not mutually exclusive, however. Elizabeth has sued the Aldermen and Mayor in their official capacities for taking adverse employment actions against her. When individuals are sued in their official capacity for acts they have performed as officials, they are entitled to the same immunity as the entity they serve.[39] Moreover, as we have noted, Smith was not acting in his official capacity, and therefore was not part of the City, when he committed the alleged legal violations.

Elizabeth also cites *City of San Antonio v. Heim*[40] to support her position that the Act protects an employee who reports *any* violation of the law, including a violation committed outside the scope of governmental obligations. *Heim* involved a situation where a police officer alleged he was retaliated against by his superiors for arresting an off-duty police officer for driving while intoxicated[41] and is distinguishable from the case before us. For instance, the person who committed the alleged legal violation was a public employee, a police officer.[42] Also, the *Heim* court held that the alleged criminal act of driving while intoxicated, if true, was a violation of the arrested officer's official

duty as a police officer to obey as well as enforce the law.[43]

Because the Legislature has not waived the City's sovereign immunity from suit under the Act, the trial court erred in denying the City's plea to the jurisdiction as to Elizabeth's claims. In addition, because Elizabeth's suit against the Aldermen and Mayor in their official capacities is actually a suit against the City,[44] the trial court erred in denying the Aldermen and Mayor's motion for summary judgment as to Elizabeth's claims against them in their official capacities. We sustain the City, Aldermen, and Mayor's first issue. Further, because Elizabeth has withdrawn her claims against the Aldermen and Mayor in their individual capacities, we need not address the Aldermen and Mayor's second issue concerning whether they can be sued under the Act in their individual capacities.

## IV. Bob's Appeal

### A. Libel and Slander Claims

In his first issue, Bob contends the trial court erred by granting summary judgment on his libel and slander claims. Bob's libel and slander claims are only against Lowther, Smith, and Landin individually. He has dropped his libel and slander claims against the City and against McCoy individually.

Bob's claims are based on statements made during October 29 and November 3, 1997 city council meetings or immediately

---

39. *Will,* 491 U.S. at 71, 109 S.Ct. at 2312; *Scott,* 16 S.W.3d at 180.

40. 932 S.W.2d at 287.

41. *Id.* at 289.

42. *Id.*

43. *Id.* at 290, (citing Tex.Code Crim. Proc. Ann. art. 2.13(a) (Vernon Supp.2001)); *Davis v. Passman,* 442 U.S. 228, 246, 99 S.Ct. 2264, 2277, 60 L.Ed.2d 846 (1979).

44. *Will,* 491 U.S. at 71, 109 S.Ct. at 2312.

thereafter to newspaper reporters. The specifics of the statements are as follows:

By Lowther:

- Parker–Jones, Inc., a private investigative firm, was conducting an investigation into possible criminal wrongdoing by Bob.

- Bob was unqualified and just plain incompetent to hold the position of police chief.

By Smith:

- Bob was not competent or qualified to serve as chief of police for the City.

- Bob was fired because he was incompetent.

By Landin:

- Bob was not competent to run the police department.

Several of these comments were printed in two Dallas Morning News newspaper articles.

▪▪▪ Lowther, Smith, and Landin assert summary judgment on Bob's libel and slander claims against them individually is proper because their comments were made in their official capacities as aldermen and mayor, not in their individual capacities. Lowther, Smith, and Landin contend that, as high-ranking city officials, their comments were absolutely privileged. We agree.

▪▪▪ The summary judgment evidence shows that the complained-of remarks were all made during or immediately after the city council meetings at which the city council voted to place Bob on administrative leave and then to remove him as police chief. Both the operation of a police department and the hiring and firing of city employees are governmental functions.[45] A city is immune from a suit for libel and slander where the alleged defamation occurred in the performance of a governmental function.[46] This same immunity extends to city officials acting in their official capacities.[47]

▪▪▪ Moreover, comments made to the press by high-ranking governmental officials concerning personnel matters, such as the reasons for a governmental employee's termination, are absolutely privileged.[48] "When the head of a state executive agency offers an explanation to the press, and hence the public, for the dismissal of employees, he acts within his official duties." [49]

We believe this principle applies equally to the present situation, even though the governmental entity at issue is a city rather than a state agency. Landin, as mayor, and Lowther and Smith, as aldermen and city council members, were charged with governing the City. Thus, they were three of the City's highest ranking officials. The city council was directly responsible for removing Bob from his position as police

---

**45.** *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex.1995); *City of Dallas v. Moreau*, 718 S.W.2d 776, 779 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

**46.** *Moreau*, 718 S.W.2d at 779.

**47.** *Will*, 491 U.S. at 71, 109 S.Ct. at 2312; *Scott*, 16 S.W.3d at 180.

**48.** *See Salazar v. Morales*, 900 S.W.2d 929, 932–34 (Tex.App.—Austin 1995, no writ) (holding that Texas Attorney General has an absolute privilege to publish, in response to

news reporters' inquiries, material about employee terminations that may be perceived to be defamatory).

**49.** *Id.* at 934; *see also Barr v. Matteo*, 360 U.S. 564, 574–75, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959) (holding that press release issued by acting director of Office of Rent Stabilization regarding employee termination was within scope of director's official duties and absolutely privileged).

chief, and Lowther's, Smith's, and Landin's alleged comments to the press were simply an explanation of the reasons for Bob's dismissal.

As we have noted, the firing of governmental employees is a governmental function. In keeping with *Salazar* and *Barr,* we believe the provision of an explanation for the reasons behind the exercise of this governmental function by those directly responsible for it is within the scope of their official duties. Thus, the alleged comments were within the scope of Lowther's, Smith's, and Landin's official duties and were made in their official capacities. As such, the comments were absolutely privileged, and Lowther, Smith, and Landin cannot be held individually liable for them. We hold the trial court did not err by granting summary judgment on Bob's claims against Lowther, Smith, and Landin, individually. We overrule Bob's first issue.

### B. Whistleblower Claims

In his second and third issues, Bob contends the judgment for the City, Aldermen, and Mayor on his whistleblower claims is improper because Smith was the employing governmental entity within the meaning of the Act and because the Act protects a public employee who reports *any* violation of the law, including a violation committed outside the scope of an official's governmental duties. Bob's arguments under these issues are essentially the same arguments we considered when we addressed Elizabeth's whistleblower issues. We overrule Bob's second and third issues for the reasons stated in our discussion of Elizabeth's issues. We hold the trial court properly granted the City's plea to the jurisdiction and the Aldermen and Mayor's motion for summary judgment on Bob's whistleblower claims.

### V. Conclusion

We reverse the trial court's judgment denying the City's plea to the jurisdiction and the Aldermen and Mayor's motion for summary judgment as to Elizabeth's whistleblower claims. We render judgment that the City, Aldermen, and Mayor are immune from suit on Elizabeth's whistleblower claims. We affirm the remainder of the trial court's judgment.