# Supreme Court of Texas

---

No. 22-1023

---

City of Denton,
*Petitioner*,

v.

Michael Grim and Jim Maynard,
*Respondents*

---

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

---

**Argued January 10, 2024**

JUSTICE BLACKLOCK delivered the opinion of the Court.

The Whistleblower Act prohibits government employers from taking "adverse personnel action" against "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE § 554.002(a). The plaintiffs reported an alleged violation of law by a lone member of the Denton city council. They claim they were fired for doing so, and they sued the city under the Whistleblower Act.

As the language quoted above makes clear, the Whistleblower Act does not protect a public employee who reports just *anyone's* violation of law. Instead, the report must be of a violation of law "by the employing governmental entity" or by "another public employee." The parties agree that members of the unpaid Denton city council are not public employees. The parties disagree over whether the city council member's violation of law was "a violation of law by the employing governmental entity," the City of Denton. We hold that it was not. The lone city council member lacked any authority to act on behalf of the city, and her actions therefore cannot be imputed to the city. As a result, her violation of law was in no sense a "violation of law by the employing governmental entity."

It is not enough that the alleged violation of law concerns city business or was committed by the council member in her official capacity. The statutory text is clear that only reports of "violation[s] of law by the employing governmental entity or another public employee" trigger whistleblower protections. Because the plaintiffs' report was neither, they did not allege a viable claim under the Whistleblower Act. The judgment of the court of appeals is reversed, and judgment is rendered for the city.

## I.

Denton's city council has seven, unpaid members. The city owns the local electric utility, Denton Municipal Electric (DME). Plaintiffs Michael Grim and Jim Maynard were city employees who worked for DME. The plaintiffs appear to have supported construction of a controversial new power plant called the Denton Energy Center (DEC).

2

Keely Briggs, a member of the city council, opposed the new plant. Briggs obtained internal city documents about the project and gave the documents to a reporter with the local newspaper. Briggs acted alone. She met with the reporter at her home, without the approval or knowledge of any other city council members or city employees. The newspaper posted some of the documents on its website but took them down a few hours later. The article publicly named Briggs as the source of the documents.

The plaintiffs reported to the city attorney that Briggs leaked confidential vendor information, allegedly in violation of the Public Information Act[1] and the Open Meetings Act.[2] In the plaintiffs' view, this report triggered the Whistleblower Act's protections. Whether Briggs actually violated the Public Information Act or the Open Meetings Act is not briefed in this Court and is not relevant to the resolution of this appeal. The city council approved the DEC project on September 20, 2016, over Briggs's dissent.

Denton hired a new city manager, Todd Hileman, in January 2017. Hileman began asking questions about possible improper influence by vendors during the procurement process for the new plant. Some of these questions concerned whether the plaintiffs in this case, Grim and Maynard, improperly accepted fishing or hunting trips from DEC vendors. Hileman retained an investigator to study the matter. Eventually, both Maynard and Grim were placed on leave, ostensibly

---

[1] TEX. GOV'T CODE §§ 552.001–.376.

[2] *Id.* §§ 551.001–.146.

3

because of concerns about the vendor trips and about whether they had been forthcoming during the internal investigation.

After the May 2017 election, a majority of the new city council opposed the DEC project. The contracts for the plant had already been made, however. Hileman decided to fire both Maynard and Grim in July 2017. Maynard's termination letter says Maynard was fired for giving investigators inaccurate information about a fishing trip. Grim's letter likewise says he was not candid with investigators, and it cites a loss of confidence in him as a manager. A city witness offered additional rationales for the firings.

The firings occurred ten months after the plaintiffs' report about Briggs's leaks to the newspaper. The city contends that the firings of Grim and Maynard were unrelated to their report about Briggs. The plaintiffs disagree. They allege they were fired for reporting Briggs's violations of law. They believe this decision was made by the new city council and carried out by Hileman in retaliation for their allegations against Briggs. As the plaintiffs see it, the investigation of procurement irregularities was a sham, and the decision to fire them for "blowing the whistle" had already been made.

The city argued in the district court the same theory it now urges in this Court—that the Whistleblower Act does not apply because the plaintiffs did not report a violation of law "by the employing governmental entity or another public employee." TEX. GOV'T CODE § 554.002(a). The court was not convinced. The case proceeded to a jury trial, which resulted in a $4 million judgment for the plaintiffs.

4

The city's appeal raised several issues, including the dispositive legal question we address today. The court of appeals affirmed, over a dissent. 683 S.W.3d 118, 141 (Tex. App.—Dallas 2022).

## II.

## A.

We need not decide whether Briggs violated a law by leaking information to a reporter about the DEC project. We also need not decide whether the plaintiffs were fired because they reported this alleged violation of law. The jury found they were fired for that reason, so we assume that is true for purposes of this appeal. Even if Briggs violated a law and even if the plaintiffs were fired for reporting her, we must still decide whether the report the plaintiffs made is the kind of report that activates the Whistleblower Act's protections. If it is not, then the plaintiffs' claims fail as a matter of law, irrespective of the jury verdict. For the following reasons, we agree with the city that the Whistleblower Act does not apply to the plaintiffs' report of council member Briggs's alleged violations of law.

We once described the Whistleblower Act as "a broad remedial measure intended to encourage disclosure of governmental malfeasance and corruption." *City of Waco v. Lopez*, 259 S.W.3d 147, 154 (Tex. 2008). Such general judicial statements about a statute's purpose can never substitute, of course, for a careful reading of the authoritative text enacted by the Legislature. Thus, we later clarified that, while the Whistleblower Act may be "aimed at ferreting out government mismanagement to protect the public" because of concerns "that employees who disclose mismanagement deserve legal protection," the

5

Act's text only "provides a limited waiver" of the government's immunity and "is not intended to protect *all* reports" of wrongdoing. *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 182, 184 (Tex. 2022) (internal quotation marks omitted).

The disputed portion of the statute says:

> A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

TEX. GOV'T CODE § 554.002(a). The prohibition against "adverse personnel action" applies only when there is a report of a violation of law by "the employing governmental entity" or by "another public employee." The text does not protect *all* reports of violations of law associated somehow with government business. Instead, as we recently held, "the Whistleblower Act protects only express reports to an appropriate law enforcement authority that unambiguously identify the employing governmental entity or another public employee as the violator." *Tex. Health & Hum. Servs. Comm'n v. Pope*, 674 S.W.3d 273, 281 (Tex. 2023).

The statute could certainly have been written to include all reports of public corruption or of illegality associated with the government. It was not. When answering a question of statutory interpretation, we look always to "the plain meaning of the words chosen" by the Legislature. *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 642 S.W.3d 551, 557 (Tex. 2022). When those words unambiguously answer the question at hand, a court's inquiry is at an end, irrespective of anyone's assessment of the statute's overall intent or purpose.

6

The Whistleblower Act defines a "public employee" as "an employee or appointed officer other than an independent contractor who is paid to perform services for a state or local governmental entity." TEX. GOV'T CODE § 554.001(4). Denton's city council members are not paid for their service, and the plaintiffs therefore concede, as they must, that Briggs was not "another public employee."

The case therefore turns on whether the plaintiffs reported a violation of law "by the employing governmental entity" when they reported Briggs's interaction with the local newspaper. The relevant facts are not in dispute, and the question is purely one of law, which we decide de novo. *Colorado County v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017).

**B.**

Asking whether Briggs's actions can be imputed to the city for purposes of the Whistleblower Act is much like asking whether her actions can be imputed to the city for any other purpose. The statute itself could of course prescribe a different analysis, either by defining "violation of law by the employing governmental entity" or by giving some other indication that a different approach is required. It does not do so. This does not leave us without an answer, however. We presume the Legislature enacts statutes with full knowledge of the existing law. *In re Bridgestone Ams. Tire Operations, LLC*, 459 S.W.3d 565, 572 (Tex. 2015). The law, both before and after passage of the Whistleblower Act, is familiar with the common question of whether an individual person's actions will be imputed to an organization or entity. We need only apply

7

those familiar principles here in order to decide whether Briggs's alleged illegal act is also the City of Denton's alleged illegal act.

There are at least two senses in which the law might impute Briggs's acts to the city. First, if the nature of Briggs's position with the city vested her with the legal authority to act for the city, then the law would frequently treat her actions as the city's actions. This is a question of the structure of Denton's city government. Second, irrespective of Briggs's position with the city, if legal principles such as agency and vicarious liability dictate that her disputed actions are imputed to the city, then her violation of law could be the city's violation of law. This is a question of the law of agency. Neither question resolves in the plaintiffs' favor. We address them in turn.

We begin with whether Briggs has authority to act for the City of Denton by virtue of her position as a city council member. She does not. As with most multi-member governing bodies, the individual members of Denton's city council have no authority to bind the City of Denton through unilateral action, absent a grant of such authority in the city charter or an ordinance. In general, "[c]ities can express and bind themselves only by way of a duly assembled meeting," *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003), and "the words of one city council member or city employee do not ordinarily bind the entire city council," *City of Austin v. Whittington*, 384 S.W.3d 766, 785 (Tex. 2012).[3] This limitation on the authority of city council

---

[3] *See also Cent. Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 612 (Tex. App.—Corpus Christi–Edinburg 1998, pet. dism'd w.o.j.); *City of Corpus Christi v. Bayfront Assocs.*, 814 S.W.2d 98, 105 (Tex. App.—Corpus

members is an inherent aspect of their positions, from which they can wield great power, but only as a group. A city council member's inability to act unilaterally for the city is a basic, definitional aspect of the office. Unlike employees or other agents whom the law or the city council has given legal authority to act for the city, the actions of a lone council member are generally not the actions of the city itself. Nor are violations of law by a lone council member violations of law by the city.

Even though Briggs's seat on the city council does not itself empower her to act unilaterally for the city, it could nevertheless be true, depending on the circumstances, that the law of agency would impute Briggs's actions to the city. Municipalities are a species of corporation. *See Deacon v. City of Euless*, 405 S.W.2d 59, 62 (Tex. 1966).[4] "Corporations, by their very nature, cannot function without human agents. As a general rule, the actions of a corporate agent acting on behalf of the corporation within the scope of his authority are deemed the corporation's acts." *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex.

---

Christi–Edinburg 1991, writ denied); *Stirman v. City of Tyler*, 443 S.W.2d 354, 358 (Tex. App.—Tyler 1969, writ ref'd n.r.e.); *City of Farmers Branch v. Hawnco, Inc.*, 435 S.W.2d 288, 292 (Tex. App.—Dallas 1968, writ ref'd n.r.e.) ("[S]tatements by individual members of a council or board are not binding on a governmental body which may act only in its official capacity.").

[4] *See also State v. Wilson*, 490 S.W.3d 610, 618 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Statutes often refer to municipalities as corporate entities. *See, e.g.*, TEX. LOC. GOV'T CODE §§ 5.902(b) ("A change in designation [from 'town' to 'city'] does not affect the municipality's corporate existence or powers."); 6.011; 6.012; 6.014 ("A municipality that changes to a Type A general-law municipality retains the prior name by which it was known and continues to be a body corporate with perpetual succession."); 42.021(a), (b), (d); 42.0235(a)(1); 42.026(b)(3); 42.0411(c), (d); 42.105(e); 42.155(c); 42.903(b); 51.016; 51.052(b)(3); 62.001; 62.041(a); 62.091(a); 62.093; 62.161.

1995).[5] Briggs's acts—including her violations of law—could be deemed the city's acts if she was acting at the time as the city's agent. Although she lacks legal authority to act for the city *on her own*, it is not difficult to imagine circumstances in which the city might be deemed to have made her its agent.

For instance, a majority of the city council might authorize a single member of the council to take various actions on behalf of the city, assuming such an arrangement does not violate the city's charter. If a council member has been authorized by the council to act for the city regarding a certain topic, then the council member's actions concerning that topic could very well be imputed to the city—for purposes of the Whistleblower Act or otherwise. Had the council designated Briggs as its liaison to the local media, for example, then Briggs's actions in this case might be imputed to the city. Or if city personnel were assigned to an unpaid council member to work under the member's supervision, the law might impute to the city a council member's actions in his capacity as the manager of city employees. In such an instance, it might be argued that the city has delegated its authority to manage its employees to the individual council member, who then acts on the city's behalf in that regard. No such scenario is alleged here.

---

[5] *See also Speedy Stop Food Stores, Ltd. v. Reid Rd. Mun. Util. Dist. No. 2*, 282 S.W.3d 652, 656 n.2 (Tex. App.—Houston [14th Dist.] 2009) ("It is well-established that corporations can act only through human agents and that, when an officer or corporate representative acts on behalf of a corporate entity, that act is the act of the corporation itself." (citing *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex.1997))), *aff'd*, 337 S.W.3d 846 (Tex. 2011); *Whitney Nat'l Bank v. Baker*, 122 S.W.3d 204, 209 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("A corporation or other legal entity can conduct business only through natural persons.").

Or to take another example, if Briggs had acted at the request or with the consent and involvement of the city manager or another employee with authority to act for the city, then she might very well be considered the city's agent. In other words, Briggs's authority to act for the city need not necessarily have been documented in an ordinance or a contract if the facts show that she acted at the city's behest or at the behest of others whose actions the law would impute to the city. A governmental entity cannot shield its violations of law from the Whistleblower Act by laundering them through unpaid elected officials or other non-employees.[6]

Thus, the inquiry does not necessarily end with the observation that Briggs's position on the city council gave her no authority to act unilaterally for the city. We must also consider whether she was acting in concert with or under delegated authority from another city official at the relevant time. There is no indication of any such arrangement in this case. It is undisputed that Briggs acted entirely on her own, without the involvement or knowledge of any other council member or employee. She never purported in any way to be acting for the city. Indeed, it would have been clear to the reporter that Briggs was acting adversely to the city, rather than on its behalf, by seeking to undermine a course of action that was supported at the time by a majority of the city council.[7]

---

[6] We do not purport to answer any of the myriad other questions that might arise, in particular cases, about the Whistleblower Act's applicability to the hypothetical circumstances posited above.

[7] We need not decide whether the actions of a council member who lacks *actual* authority to act for the city but has *apparent* authority to act for the city

11

Both as a matter of the structure of Denton's government and as a matter of agency law, there is no sense at all in which Briggs's communications with the newspaper were the actions of the City of Denton. The reported violations of law were by Briggs alone, not "by the employing governmental entity." TEX. GOV'T CODE § 554.002(a). As a result, any adverse personnel action stemming from the plaintiffs' report of Briggs's conduct cannot support a Whistleblower Act claim.

## C.

As did the court of appeals, the plaintiffs rely heavily on two precedents from the courts of appeals, neither of which alters our understanding of the Whistleblower Act's text. First, in *City of Cockrell Hill v. Johnson*, the plaintiffs sued the city after they were fired for reporting that a city alderman abused his stepson. 48 S.W.3d 887 (Tex. App.—Fort Worth 2001, pet. denied). The court held that the alleged violations of law were not the city's violations because the alderman committed them "in his personal capacity." *Id.* at 896. The court went on to suggest the result would be different if the alderman acted in his "official capacity." *Id.* The court cited two prior court of appeals decisions involving county sheriffs to support its view that violations of law by an alderman in his official capacity amount to violations of law "by the employing governmental entity." *Id.* at 895; TEX. GOV'T CODE § 554.002(a).

Unlike a county sheriff, however, a city alderman or council member generally has no authority to act unilaterally on behalf of the

could be imputed to the city under the Whistleblower Act. Briggs plainly had neither.

12

city, even when acting in an official capacity. There is no indication that the court in *Johnson* was presented with this argument.

The court in *Johnson* also suggested that the Whistleblower Act should be construed to apply to violations of law that are "detrimental to the public good or society in general." 48 S.W.3d at 896. The court did not ground that statement in the statute's text, however. We do not find this statement or others like it to be useful in understanding the meaning of the Whistleblower Act. To the contrary, this sort of aspirational judicial statement about the goals of the Whistleblower Act (or any other statute) can mistakenly point litigants and courts away from the real touchstone, which should always be the text chosen by the Legislature. However justified such statements may seem in a given case, the very real risk is that in later cases they find themselves equated with the statutory text itself.

That is precisely what happened in *Housing Authority of the City of El Paso v. Rangel*, the second case on which the plaintiffs place great weight. 131 S.W.3d 542 (Tex. App.—El Paso 2004, pet. granted, judgm't vacated w.r.m.). An employee with El Paso's housing authority alleged he was terminated for reporting lawbreaking by two members of the authority's board, which, like a city council, may only act as a body. *Id.* at 544; *see* Tex. Loc. Gov't Code § 392.036. One of the allegations was that a board member misrepresented his personal income to obtain public housing benefits. *Rangel*, 131 S.W.3d at 548.

Quoting *Johnson*'s broad statement of statutory purpose, the court held that the Whistleblower Act applies to "legal violations that are detrimental to the public good or society in general." *Rangel*, 131

13

S.W.3d at 548. Under this standard, the court concluded that an individual board member's public-benefits fraud for personal gain was, for purposes of the Whistleblower Act, a violation of law "by the employing governmental entity." *Id.* The court reasoned that the alleged wrongdoing was "detrimental to society in general and would be the type of conduct the public would be concerned about if committed by an appointed commissioner." *Id.* The court also found it relevant that the alleged misconduct "constitutes misconduct of office" and that "[s]ociety as a whole is detrimentally affected by such a misrepresentation." *Id.*

With *Johnson*'s aspirational statement as its starting point, *Rangel* thus added several other such statements, none of which enjoy firm grounding in the legislative text. While statements like these may accurately capture much of the spirit motivating the enactment of the Whistleblower Act, they are better suited for legislative debate than for a judicial opinion. They rarely aid resolution of disputes about the meaning of the text itself, which frequently—as in this case—will depend on subtleties in the Legislature's choice of words that are not captured in sweeping generalizations about the statute's goals. The unfortunate tendency of these lofty judicial statements is to distract from the text's meaning by suggesting that application of the statute turns on judicially announced considerations untethered from the text. Extra-textual judicial commentary about the Whistleblower Act's laudable motivations should not be relied upon by courts or litigants seeking to understand the meaning of the statutory text. We disapprove

14

of *Johnson*, *Rangel*, or any other cases to the extent they suggest otherwise.

## III.

For the foregoing reasons, the plaintiffs did not allege a cognizable claim against the City of Denton under the Whistleblower Act. The lower courts erred in concluding otherwise. The judgment of the court of appeals is reversed, and judgment is rendered for the defendant.

_____

James D. Blacklock
Justice

**OPINION DELIVERED:** May 3, 2024