HOUSING AUTHORITY OF THE CITY OF EL PASO, Texas, Appellant,

v.

Rodolfo RANGEL, Appellee.

No. 08–02–00319–CV.

Court of Appeals of Texas, El Paso.

Feb. 5, 2004.

Rehearing Overruled March 17, 2004.

---

3. John does not complain that he had less than forty-five days' notice of the December 4 setting.

Edward Dunbar, Dunbar, Armendariz, Crowley & Hegeman, L.L.P., El Paso, for Appellant.

Luther Jones, Jones & Georges, El Paso, for Appellee.

Before Panel No. 1 LARSEN, ANN CRAWFORD McCLURE, and CHEW, JJ.

### OPINION

ANN CRAWFORD McCLURE, Justice.

Rodolfo Rangel brought a "whistleblower" claim after he was terminated from his position with the Housing Authority of the City of El Paso (HACEP), just two weeks after reporting two members of HACEP's Board of Commissioners for improper activity. HACEP filed a plea to the jurisdic-

tion which was denied by the trial court. For the reasons that follow, we affirm.

## FACTUAL SUMMARY

Rodolfo Rangel worked for HACEP as deputy executive director for financial services. He was responsible for accounting, MIS, procurement, contracting, Section 8 programming, warehousing, insurance, investments, and reporting to the Department of Housing and Urban Development (HUD). He had worked for public housing authorities for over thirty years and been with HACEP since April 1995.

In the early part of 2001, Rangel sent several electronic messages to the HUD regional office in Fort Worth to report improper activity by two HACEP commissioners, Gerardo Licon and Lourdes Lozano. He advised them that Licon had a conflict of interest as the owner of Raba–Kistner, an engineering firm, which was working as a sub-contractor for Hunt Building Corporation on a $12 million project with HACEP. Rangel claimed that Licon allowed company vehicles and equipment to perform work for Hunt on the project. Rangel never saw a contract between Hunt and Raba–Kistner nor did he know if one ever existed. Licon claimed that his company never received any payments from Hunt after he became a Board member. While his company worked on a project with Hunt, he instructed his staff to remove themselves from the project and cancel any billings when he learned it was a HACEP project.

Rangel also claimed that Lozano falsified documentation in order to obtain benefits from the Section 8 new construction and voucher programs. Lozano purportedly misrepresented information in order to be moved out of public housing and into a Section 8 home. Rangel alleged that Lozano's conduct not only violated HUD rules and regulations, but that it also constituted welfare fraud.

On February 6, 2001, Rangel attended a meeting in Fort Worth at the regional HUD office. He told Roman Palomares, the deputy director of HUD's Office of Public Housing, that he had an obligation to report the fraud and he believed that HUD was the proper agency to receive the report. He had several telephone conferences with Palomares after the initial complaint.

Rangel, Alberto Davalos, and Terry Craig, all deputy executive directors of HACEP, officially reported the misconduct in a subsequent letter to Palomares on February 18, 2001. At roughly the same time, Rangel sent an anonymous letter to the office of Inspector General. He did not include his name for fear of retaliation by the Board of Commissioners. In both letters he listed the various acts of misconduct, which included misappropriation of public funds by Commissioner Licon and unlawful application for increased benefits by Commissioner Lozano.

On February 23, 2001, Rangel was terminated from his position. He had never received a poor job evaluation or a bad audit in the thirty-six years he had worked with various housing authorities. Rangel believed he was fired because he reported illegal conduct to HUD and because he was planning to report illegal conduct to the Federal Bureau of Investigation. He filed suit against HACEP alleging a violation of the Texas Whistleblower Act and seeking recovery for lost earnings and mental anguish.

## STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea by which a party contests the trial court's authority to determine the subject matter of the cause of action. *See, e.g., State v. Benavides,* 772 S.W.2d 271,

273 (Tex.App.-Corpus Christi 1989, writ denied). Because the question of subject-matter jurisdiction is a legal question, we review the trial court's ruling on a plea to the jurisdiction *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998), *cert. denied*, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999). We look to the allegations in the pleadings, accept them as true, and construe them in favor of the pleader. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *City of Saginaw v. Carter*, 996 S.W.2d 1, 2–3 (Tex.App.-Fort Worth 1999, pet. dism'd w.o.j.). We also consider evidence relevant to the jurisdictional issue that was before the trial court when it ruled on the plea. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

## TEXAS WHISTLEBLOWER ACT

█ The Whistleblower Act prohibits a state or local governmental entity from suspending or terminating a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority. TEX. GOV'T CODE ANN. § 554.002(a)(Vernon Pamphlet 2004). The statute was enacted to protect public employees who report illegal activity and to enhance openness in government and compel compliance with the law. *Wichita County, Texas v. Hart*, 917 S.W.2d 779, 784 (Tex.1996); *Castaneda v. Texas Dep't of Agriculture*, 831 S.W.2d 501, 503 (Tex.App.-Corpus Christi 1992, writ denied). The Act has also been utilized to protect public employees who are fired for reporting employers' violations of law that are detrimental to the public good or society in general. *See Stinnett v. Williamson County Sheriff's Dep't*, 858 S.W.2d 573, 575 (Tex.App.-Austin 1993, writ denied). Because the statute is remedial in nature, we construe it liberally.

*Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1281 (5th Cir.1991).

The cause of action created by the Whistleblower Act is purely statutory, creating a right and remedy unknown at common law. *Hart*, 917 S.W.2d at 782. To prevail on his claim, Rangel must show the existence of the following elements: (1) he is a public employee; (2) he acted in good faith; (3) his report involved a violation of law; (4) the violation of law was by the employing governmental agency or another public employee; (5) he made his report to the appropriate law enforcement authority; and (6) he suffered retaliation as a result of making his report. *See* TEX.GOV'T CODE ANN. § 554.002(a). In two points of error, HACEP challenges the fourth and fifth elements.

## VIOLATION BY EMPLOYING AGENCY OR PUBLIC EMPLOYEE

In Point of Error One, HACEP argues that Rangel failed to allege a violation of law by the employing governmental agency or another public employee. It complains that Rangel never contended that Licon or Lozano were public employees. Nor did he demonstrate that the commissioners' misconduct was committed in their official capacity or authorized by HACEP in order to impute the misconduct to the employing governmental agency.

### *Public Employee*

█ We must first determine whether Commissioners Licon and Lozano are public employees. *See* TEX.GOV'T CODE ANN. § 554.002. A public employee is defined as an employee or appointed officer other than an independent contractor who is paid to perform services for a state or local governmental entity. TEX.GOV'T CODE ANN. § 554.001(4). A housing authority is in-

cluded within the definition of a local governmental entity. *See Gracia v. Brownsville Housing,* 105 F.3d 1053, 1056 (5th Cir.), *cert. denied,* 522 U.S. 865, 118 S.Ct. 171, 139 L.Ed.2d 114 (1997). But HACEP commissioners are not compensated. *See* Tex.Loc.Gov't Code Ann. § 392.035 (Vernon 1999).

Since the Legislature limited the Whistleblower Act's application to those employees who are paid for their services, we must examine the meaning of "paid." In construing the statute, we must determine and give effect to the Legislature's intent by looking at the statute's common meaning and presuming that the Legislature intended the plain meaning of its words. *See* Tex.Gov't Code Ann. § 311.011(a)(Vernon 1998); *National Liability and Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex. 2000). The ordinary and plain meaning of "pay" or "paid" is to compensate or give something in return for goods or services. *See* Webster's New International Dictionary 1620, 1659 (3d. ed.1981). The Texas Supreme Court has determined that a volunteer reserve deputy sheriff who was not paid for his services was not an employee under the Texas Tort Claims Act. *Harris County v. Dillard,* 883 S.W.2d 166, 167 (Tex.1994). This distinction has also been applied to the Whistleblower Act. *City of Cockrell Hill v. Johnson,* 48 S.W.3d 887, 893 (Tex.App.-Fort Worth 2001, pet. denied)(holding that a city alderman was not a public employee under the Whistleblower Act because he was not paid for his services).

◼ Licon and Lozano were not paid for their services as commissioners. Applying the plain and common meaning of the term "paid," we conclude that HACEP commissioners are not public employees under the Whistleblower Act.

*Employing Governmental Entity*

Next we must determine whether the acts of Commissioners Licon and Lozano can be construed to be acts of the employing governmental entity. HACEP is included within the definition of a local governmental entity. *See Gracia,* 105 F.3d at 1056. It is governed by a Board of Commissioners appointed by the mayor. *See* Tex.Loc.Gov't Code Ann. § 392.031. The powers of the authority are vested in the Board of Commissioners. *See* Tex.Loc. Gov't Code Ann. § 392.051.

◼ An employee's actions taken pursuant to his duties and authorized by state law are considered actions taken by the State. *See Camacho v. Samaniego,* 954 S.W.2d 811, 818 (Tex.App.-El Paso 1997, writ denied). Conversely, acts outside the scope of an employee's official duties are not acts of the State. *See id.* at 818–19. We thus address whether the acts of Licon and Lozano were within the scope of their duties as commissioners.

◼ First, Rangel complains that Licon had a conflict of interest with a Housing Authority project as owner of Raba–Kistner, a company serving as a subcontractor for the general contractor. A commissioner may not have dealings with a housing project for pecuniary gain and may not own, acquire, or control a direct or indirect interest in a: (1) housing project; (2) property included or planned to be included in a housing project; (3) contract or proposed contract for the sale of land to be used for a housing project; (4) contract or proposed contract for the construction of a housing project; (5) contract or proposed contract for the sale of materials or services to be furnished or used in connection with a housing project. *See* Tex.Loc.Gov't Code Ann. § 392.042(b). If a commissioner controls a direct or indirect interest in a HACEP project for pecuniary gain, the commissioner must disclose

his interest. *Id.* at § 392.042(d). Failure to disclose such an interest constitutes misconduct of office. *Id.* Consequently, the conduct of Commissioner Licon clearly constitutes misfeasance in his official duties.

Rangel also contends that Lozano misreported her income in order to gain Section 8 housing and that she used her position as a commissioner to facilitate the approval of her application for higher benefits. HACEP responds that Lozano's actions cannot be construed to be actions of the Authority because she acted as a tenant in her income misrepresentation, not as a commissioner.

■ "A municipality with a municipal housing authority composed of five commissioners shall appoint at least one commissioner to the authority who is a tenant of a public housing project over which the authority has jurisdiction." TEX.LOC.GOV'T CODE ANN. § 392.0331(b)(Vernon Pamphlet 2004). A tenant commissioner may not participate in any vote or discussion concerning the *termination* of the commissioner's occupancy rights in public housing or the rights of any person related in the first degree by consanguinity to the commissioner. *See id.* at § 392.0331(g). The statute seems to only forbid the commissioner's participation in the termination of her benefits. Here, however, the misconduct involved the procurement of additional benefits which could fall within the official duties of a commissioner.

■ Moreover, the Whistleblower Act is directed at public employers' legal violations that are detrimental to the public good or society in general. *See Stinnett,* 858 S.W.2d at 575. The Fort Worth Court of Appeals has examined this issue in the context of a family disturbance, sexual assault, and drug charge against a city alderman. *City of Cockrell Hill,* 48 S.W.3d at 890. The court found that the legal viola-

tions alleged to have been committed by the alderman did not relate to the affairs of the City itself and that the actions were detrimental to the individuals involved, not to society in general. *Id.* at 896. The court also decided that the alderman's actions were not matters the public would be concerned about simply because of the alderman's status as an elected official. *Id.* The facts here are distinguishable. Lozano's actions in misstating her income were detrimental to society in general and would be the type of conduct the public would be concerned about if committed by an appointed commissioner of HACEP. The governing board is charged with the authority to rent or lease housing to those with low income in accordance with authority guidelines. *See* TEX.LOC.GOV'T CODE ANN. § 392.055. The misfeasance committed by Lozano clearly relates to the affairs of HACEP and was not merely detrimental to those parties involved. Society as a whole is detrimentally affected by such a misrepresentation because deserving candidates may be turned away and denied housing. And the public would be concerned if one of HACEP's own commissioners fraudulently misrepresented her personal income in order to gain better housing because the commissioner holds her position as a tenant.

We conclude that the actions of Commissioners Licon and Lozano fall within the official duties and affairs of HACEP and their misconduct should be construed as acts of the employing governmental entity. Point of Error One is overruled.

## REPORT TO APPROPRIATE LAW ENFORCEMENT AUTHORITY

In Point of Error Two, HACEP contends that HUD was not the proper state agency to which an employee should report a violation. To support the claim, it directs us to *Texas Dep't of Transporta-*

*tion v. Needham,* 82 S.W.3d 314, 315 (Tex. 2002). There, a public employee filed suit alleging that he was terminated after reporting to his supervisor that a coworker had been involved in a drunk driving incident. *Needham,* 82 S.W.3d at 316. TxDOT argued that it was not an appropriate law enforcement authority and that the court of appeals had interpreted the statute too broadly by reading a power-to-discipline qualification into the statutory definition. TxDOT contended that it is not an entity charged with regulating, enforcing, investigating, or prosecuting the state's criminal laws, including those that penalize driving while intoxicated. *Needham,* 82 S.W.3d at 318.

On review, the Supreme Court examined the statutory definition of "appropriate law enforcement authority," and found that the particular law the public employee reported violated was critical to the determination. *Needham,* 82 S.W.3d at 319–20. The court concluded that because the violation involved a driving while intoxicated charge, TxDOT was not an appropriate law enforcement authority to regulate or enforce the state's DWI statutes. *See* TEX. GOV'T CODE ANN. § 554.002(b)(1). The court reversed, finding no evidence that Needham had a good faith belief that he reported the incident to an appropriate law enforcement authority. *Needham,* 82 S.W.3d at 319–20.

While we do not disagree with the outcome in *Needham,* we find other authority to be more analogous. *Housing Authority of the City of Crystal City v. Lopez,* 955 S.W.2d 152 (Tex.App.-Austin 1997, no pet.). Lopez, an assistant executive director, sued the Housing Authority for retaliatory discrimination in violation of the Whistleblower Act. Shortly after requesting a legal clarification from HUD regarding a possible conflict of interest, Lopez was downgraded in title and author-

ity and given a poor evaluation. He later reported to HUD three possible violations of federal and local rules. Less than a week later, he was demoted to a position earning less than half of his previous salary. The jury found that HUD, which oversees and subsidizes the Housing Authority, was the appropriate law enforcement authority to which an employee should report violations. Consequently, the jury determined that Lopez acted in good faith when he reported misconduct to HUD. *Lopez,* 955 S.W.2d at 155. The court of appeals found the evidence both legally and factually sufficient to support the jury's finding that the Housing Authority retaliated against Lopez because he reported misconduct to HUD in good faith.

Here, the trial court entered the following findings of fact:

Plaintiff was an employee of the HACEP of the City of El Paso, Texas at the time he filed complaints asserting *inter alia* violations of state and federal law by two Commissioners of the El Paso HACEP to the Office of Inspector General and the Ft. Worth Regional Office of the Department of Housing and Urban Development.

That the conduct reported by Plaintiff to HUD and the OIG was conduct of the employing governmental entity—HACEP of the City of El Paso.

That the conduct reported by Plaintiff related directly to the affairs of the governmental entity and involved violations of state and/or federal law.

That the plaintiff's report of the violations of law by two HACEP Commissioners was made in good faith.

██ HACEP argues that the HUD office is a funding agency, that it has no investigative powers, and that it lacks the authority to act on the complaints. It contends that HUD could refer problems elsewhere, but could not act on its own.

Rangel responds that HACEP always reports improper activities to the regional HUD office and that after thirty years of working for the various housing authorities, he believed that it was specifically mandated. The trial court specifically found that HUD was an appropriate law enforcement agency with authority to investigate Rangel's complaints. It also found that Rangel brought the claims in good faith. We agree.

Palomares was the deputy director at the Fort Worth regional HUD office. The office has oversight of 300 public housing authorities that administer the Section 8 program. Palomares testified that one of HUD's duties is to receive complaints of illegal conduct from the various housing authorities and to conduct reviews. He received the complaint from Rangel and forwarded it to Ethel Montague, a specialist who regularly conducts investigations for HUD. Montague conducted an on-site visit in El Paso, gathered information regarding Rangel's complaint, and forwarded the documents to the legal department.

Rangel presented evidence that Licon and Lozano were both acting in their official capacities when they were involved in improper conduct. Because the conduct involved activities which HUD usually investigates and since it specifically pertained to actions taken by two of HACEP's Board members, we conclude that HUD was an appropriate law enforcement authority to which Rangel reported the claims. We overrule Point of Error Two. Having overruled both issues for review, we affirm.