NO. 07-04-0588-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JANUARY 6, 2005



______________________________




LAWRENCE HIGGINS, APPELLANT



V.



WOODBURN, SEARS & WATKINS, APPELLEE




_________________________________



FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;



NO. 050573C; HONORABLE PATRICK PIRTLE, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Appellant Lawrence Higgins, proceeding pro se, filed a notice of appeal, received by this
court on September 3, 2004, stating that he was appealing an order dated August 23, 2004,
dismissing his case for want of prosecution. Appellant did not pay the filing fee of $125 for the
appeal or submit an affidavit of indigence before or at the time he filed his notice of appeal. Tex.
R. App. P. 20.1(c)(1).


 By letter dated December 22, 2004, the clerk of this court notified appellant that the filing
fee had not been paid, and that failure to pay it could result in dismissal. Tex. R. App. P. 5, 42.3. 
He responded with a "Motion to Proceed on Appeal in Forma Pauperis." The motion does not
comport with the requirements of an affidavit of indigence described under Rule 20.1(b), nor was
it filed within the deadline prescribed by Rule 20.1(c)(1). In addition, appellant did not file a
timely motion requesting an extension of time to file his affidavit of indigence. Tex. R. App. P.
20.1(c)(3). 

 Appellant refers us to documentation of his indigence filed with the trial court as proof of
his inability to pay trial court costs. Filing an affidavit of inability to pay trial court costs does not
comply with the requirement that, for appeal, an affidavit of indigence be filed in accordance with
Rule 20.1. Holt v. F.F. Enterprises, 990 S.W.2d 756, 758 (Tex.App.-Amarillo 1998, pet. denied). 

 Failure to timely file an affidavit of indigence, or a motion for extension of time to file the
affidavit, precludes appeal without the payment of costs. See Ford v. Whitehead, 2 S.W.3d 304,
306 (Tex.App.-San Antonio 1999, no pet.). Appellant is not excused by statute or the Rules of
Appellate Procedure from paying the filing fee and has failed to comply with the requirement that
he pay the fee this court is obligated to collect. Tex. R. App. P. 5. 

 All parties having had more than ten days' notice that dismissal could result from
appellant's continued failure to comply with the rules, the appeal is dismissed. Tex. R. App. P.
5, 42.3(c). 



 James T. Campbell

 Justice




 


 We review the trial court's summary judgment de novo. Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). In reviewing a summary judgment, this Court
must apply well-established standards which are: (1) the movant for summary judgment
has the burden of showing that there is no genuine issue of material fact and that it is
entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material
fact issue precluding summary judgment, evidence favorable to the non-movant will be
taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. Am. Tobacco Co. v. Grinnell, 951 S.W.2d
420, 425 (Tex. 1997), citing Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex.
1985). Review of the denial of a motion for summary judgment is governed by the same
standard as governs review of the granting of such a motion. Delta Airlines, Inc. v. Norris,
949 S.W.2d 422, 425 (Tex.App.-Waco 1997, writ denied). 

 When an order granting summary judgment does not specify or state the grounds
relied on, the summary judgment will be affirmed on appeal if any of the grounds presented
in the motion are meritorious. Western Investments, Inc. v. Urena, 162 S.W.3d 547, 550
(Tex. 2005); Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989). When both parties move
for summary judgment on the same issues and the trial court grants one motion and denies
the other, as here, the reviewing court considers the summary judgment evidence
presented by both sides, determines all questions presented, and if the reviewing court
determines that the trial court erred, renders judgment the trial court should have rendered. 
Id. See Bank of America, N.A. v. Amarillo National Bank, 156 S.W.3d 108, 110
(Tex.App.-Amarillo 2004, no pet.). 

 The burden is on the moving party to show there is no evidence of one or more of
the essential elements of a claim or defense on which an adverse party would have the
burden of proof at trial. Tex. R. Civ. P. 166a. See Duvall v. Texas Department of Human
Services, 82 S.W.3d 474, 477 (Tex.App.-Austin 2002, no pet.). To make such a showing,
the defendant must prove there are no genuine issues of material fact concerning one or
more elements of the plaintiff's cause of action and that he is entitled to judgment as a
matter of law. Ho v. University of Texas at Arlington, 984 S.W.2d 672, 681
(Tex.App.-Amarillo 1998, pet. denied), citing Gibbs v. General Motors Corp., 450 S.W.2d
827, 828 (Tex. 1970). 

 Once the party meets this initial burden, the non-movant must submit or identify
evidence in the record raising a genuine issue of material fact as to each element of their
claim or defense challenged by the defendant's motion. Tex. R. Civ. P. 166a. A fact is
"material" if it might affect the outcome of the suit under governing law, and an issue is
"genuine" if it is real and substantial, as opposed to merely formal, pretended, or a sham. 
Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir. 2001). The non-movant may not
raise a genuine issue of material fact by submitting conclusory allegations, improbable
inferences, or unsupported speculation. See First Union Nat. Bank v. Richmont Capital
Partners I, L.P., 168 S.W.3d 917, 930 (Tex.App.-Dallas 2005, no pet.). 

Whistleblower Cause of Action

 The Texas Whistleblower Act prohibits a state or local government from taking
adverse personnel action against a public employee who in good faith reports a violation
of law by the employing governmental entity or another public employee to an appropriate
law enforcement authority. Tex. Gov't Code Ann. § 554.002(a) (Vernon 2004). The cause
of action created by the Act is purely statutory creating a right unknown at common law.
Scott v. Godwin, 147 S.W.3d 609, 621 (Tex.App.-Corpus Christi 2004, no pet.); City of
San Antonio v. Heim, 932 S.W.2d 287, 290 (Tex.App.-Austin 1996, writ denied). The
statute was enacted to protect public employees who report illegal activity and enhance
openness in government while compelling compliance with the law. Castaneda v. Texas
Dep't of Agriculture, 831 S.W.2d 501, 503 (Tex.App.-Corpus Christi 1992, writ denied). 
Because the statute is remedial in nature, it is to be liberally construed. Roberts v. Titus
County Memorial Hosp., 159 S.W.3d 764, 769 (Tex.App.-Texarkana 2005, pet. denied),
cert. denied, 564 U.S. 1095, 126 S.Ct. 1070, 163 L.Ed.2d 862 (2006). And, whether a
violation of law has been reported to an appropriate law enforcement authority is a
question of law to be decided by the court. City of Fort Worth v. DeOreo, 114 S.W.3d 664,
668 (Tex.App.-Fort Worth 2003, no pet.). 

 To establish a claim for retaliation under the Act, the claimant must prove the
following elements: (1) he is a public employee; (2) he acted in good faith in making a
report; (3) the report involved a violation of law; (4) the report was made to an appropriate
law enforcement authority; and (5) he suffered retaliation as a result of making the report. 
County of Bexar v. Steward, 139 S.W.3d 354, 357-58 (Tex.App.-San Antonio 2004, no
pet.). 

 The Act defines a "law" as a state or federal statute, ordinance of a local
governmental entity, or rule adopted under a statute or ordinance. Tex. Gov't Code Ann.
§ 554.001(1) (Vernon 2004). (2) An "appropriate law enforcement authority" is a
governmental entity that the employee in good faith believes is authorized to "regulate
under or enforce the law alleged to be violated in the report" or "investigate or prosecute
a violation of criminal law." Tex. Gov't Code Ann. § 554.002(b) (Vernon 2004).

 To establish a "good faith" reporting, the complainant must show that his belief was
reasonable in light of the employee's training and experience. Texas Dep't of
Transportation v. Needham, 82 S.W.3d 314, 321 (Tex. 2002). See Duvall, 82 S.W.3d at 
480-81. 

 For purposes of this appeal, Texas Tech does not contend that Phelan was not a
public employee who suffered an adverse personnel action. Texas Tech's defense rests
upon its contention that (1) Phelan did not report a violation of the law as contemplated by
the Whistleblower's Act, (2) the reports Phelan did make were not to an appropriate law
enforcement agency, and (3) there is no causal connection between Phelan's report and
Texas Tech's decision to non-reappoint him.Point of Error One


 By his first point of error, Phelan contends the trial court erred in granting Texas
Tech's motion for summary judgment because an adverse governmental personnel action
taken after an employee files an assault charge against a supervisor is covered by the
Texas Whistleblower's Act. In response, Texas Tech contends that an assault is not a
violation of the law as contemplated by the Act and that there is no causal relationship
between Phelan's report and Texas Tech's decision to non-reappoint him.

 Phelan contends a triable issue of fact exists regarding whether there is a causal
link between his filing the assault charge with the Texas Tech Police and his non-reappointment. In support, Phelan asserts he did not receive notice that he resign or be
terminated at the May 9 meeting because Norville alone did not have authority to terminate
him, and he did not seriously believe Norville. Phelan also asserts Kiesling's deposition
testimony affirmatively establishes that the decision to terminate him had not been made
prior to the May 14 meeting between Phelan and Kiesling. Phelan contends the decision
to terminate him was reached at the May 20 meeting between Norville, Eibeck, Kiesling,
Hall, Marcy, and Mellinger after they received Phelan's assault complaint from the Texas
Tech Police. 

 Although the Act does not explicitly require an employee prove a causal link
between the reported violation of law and the subsequent discrimination, the Texas
Supreme Court has held that the employee must demonstrate causation by a
preponderance of the evidence. City of Fort Worth v. Zimlich, 29 S.W.3d 62, 67 (Tex.
2000), citing Texas Dep't of Human Services v. Hinds, 904 S.W.2d 629, 633 (Tex. 1995). 
Requiring the employee to prove causation is necessary otherwise "the statute would give
public employees life tenure for reporting activity believed in good faith to be unlawful." Id. 
Although the employee need not prove the protected activity was the sole cause of the
employer's prohibited conduct, the employee must establish a "but for" causal nexus
between the protected activity and the employer's prohibited conduct. Vela, 186 S.W.3d
at 54. To show causation, a public employee must demonstrate that after he or she
reported a violation of law in good faith to an appropriate law enforcement authority, the
employee suffered discriminatory conduct by his or her employer that would not have
occurred when it did if the employee had not reported the illegal conduct. City of Fort
Worth, 29 S.W.3d at 67 (emphasis added).

 Phelan contends that notice of an adverse personnel action is not notice unless the
person giving the notice has ultimate authority to implement the adverse personnel action. 
It is undisputed that, on May 9, 2005, Phelan attended a meeting where Norville, his
supervisor, informed him that he had one of two options-either resign or be terminated. 
Whether Norville had sole authority to terminate Phelan's employment is immaterial. It is
sufficient that Phelan received notice from his immediate superior, Norville, that he would
be terminated. Moreover, a subjective belief on Phelan's part that Norville could not or
would not fire him is not competent summary judgment evidence. See Peavy v. Dallas
Independent School District, 57 F.Supp.2d 382, 386 n.3 (N.D. Tex. 1999). 

 Phelan next contends the date he received notice should not be controlling. Rather,
he asserts the date he received formal notification of the adverse personnel action should
be used to determine whether a causal nexus exists between his filing the criminal
complaint and his non-reappointment. Phelan cites no legal authority in support of this
proposition. We agree with Bexar that the proper focus is on the time the employee learns
of the allegedly discriminatory decision, not on the time when the consequences of that
decision come to fruition. County of Bexar, 139 S.W.3d at 357-58. This ruling comports
with prior rulings related to accrual of a cause of action for employment discrimination. 
Luna v. Frito-Lay, Inc., 726 S.W.2d 624, 628 (Tex.App.-Amarillo 1987, no writ) (court
agrees with the federal rule that accrual of an action for termination of employment occurs
when the employee is informed that this employment will be terminated, not when it
actually is terminated). See The University of Texas-Pan American v. De Los Santos, 997
S.W.2d 817, 820 (Tex.App.-Corpus Christi 1999, no pet.) (statute of limitations begins to
run when University informed employee of its intent to terminate her employment).

 Neither is Kiesling's deposition testimony sufficient to raise a genuine issue of fact
as to causation. Kiesling testified as follows: 

 MR. CARNEY: The other question I have for you is: When you went to
Dean Eibeck to ask her if it was okay to go to talk to
Scott Phelan after the e-mail about suing everybody
came out, did she mention to you anything about we
are not going to reappoint Scott?

 KIESLING: Oh, no.

 MR. CARNEY: Or we're going to fire him or anything like that?

 KIESLING: No. No, I don't think any such considerations -
Certainly we did not discuss it and I don't believe that
was in her thinking or mind or anybody at that point.


 Kiesling's testimony merely establishes that he and Eibeck did not discuss Phelan's
non-reappointment prior to his meeting with Phelan. As such, Kiesling's testimony at best
represents less than a scintilla of evidence in Phelan's favor. Further, Kiesling's testimony
regarding what Eibeck and others were, or were not, thinking is inadmissible speculation
and will not be considered. (3) 

 Phelan points to no other evidence to substantiate his assertion that the decision
to non-reappoint him was not made until the May 20 meeting. On the other hand, Provost
and Senior Vice President for Academic Affairs Marcy affirmatively states in his affidavit
the decision to non-reappoint Phelan was made prior to the May 20 meeting, and the
purpose of the meeting was to discuss proper procedures for Phelan's non-reappointment. 
Ten days after his luncheon meeting with Norville and at least six months after the alleged
assault occurred, Phelan filed a complaint with the Texas Tech Police. Thus, because
Phelan received notice of the adverse personnel action prior to his filing the assault charge,
Phelan fails to establish a Whistleblower claim because causation is lacking as a matter
of law. See County of Bexar, 139 S.W.3d at 358.

 Accordingly, we hold Phelan is not entitled to protection under the Whistleblower Act
for the reported assault because he has failed as a matter of law to prove a causal link
between the filing of his criminal complaint and his non-reappointment. Our decision
pretermits consideration of whether an assault of the person is a "violation of law" as
contemplated by the Act. Tex. R. App. P. 47.1. Point of error one is overruled.

Point of Error Two


 By his second point of error, Phelan contends the trial court erred in its
determination that Texas Tech was not an "appropriate law enforcement authority" within
the context of his report to Texas Tech officials, Eibeck, and Kiesling, that Norville was
possibly using Texas Tech property and personnel in his private consulting business. 
Texas Tech contends that, as a matter of law, Phelan's supervisors were not an
"appropriate law enforcement authority" as contemplated by the Act. 

 On deposition, Phelan testified he knew Eibeck and Kiesling did not have the
authority to prosecute Norville and/or send him to jail. Rather, Phelan testified that he
believed they would investigate his allegations, take disciplinary action and, if warranted,
refer the matter to the proper authorities. Phelan cites Texas Tech's internal policies in
support of a duty on behalf of Eibeck and Kiesling to investigate and report his complaints. 
In sum, Phelan contends he had a good faith belief he was reporting a violation of law to
an appropriate law enforcement authority when he reported the alleged misuse of Texas
Tech personnel and property to Eibeck and Kiesling because they were required to
investigate and report to higher authorities pursuant to Texas Tech's internal policies and
procedures. 

 Therefore, we must determine if there is more than a scintilla of evidence to support
Phelan's contention that a fact question existed as to whether his report constitutes a good
faith report of a violation of law to an appropriate law enforcement authority. A violation
of Texas Tech's internal policies does not constitute a "violation of law" under the Act. See
Harris County Precinct Four Constable Department v. Grabowski, 922 S.W.2d 954, 955-56
(Tex. 1996); Vela, 186 S.W.3d at 53; City of Houston v. Kallina, 97 S.W.3d 170, 174-75
(Tex.App.-Houston [14th Dist.] 2003, pet. denied); Ruiz v. City of San Antonio, 966 S.W.2d
128, 130 (Tex.App.-Austin 1998, no pet.). 

 Moreover, Phelan's statements that he believed Eibeck and Kiesling had no
authority to arrest, prosecute, or incarcerate Norville evidences that he did not have a good
faith belief Texas Tech was authorized to regulate, enforce, investigate, or prosecute any
law alleged to have been violated. (4) Further, Phelan's reliance on Texas Tech's disciplinary
process, his participation therein, and his belief that Texas Tech would forward the
information to another entity to prosecute does not raise a fact question as to whether
Phelan had a good faith belief that he was reporting a violation of law to an appropriate law
enforcement authority. Needham, 82 S.W.3d at 321. See also Roberts, 159 S.W.3d at
771-72; City of Houston, 97 S.W.3d at 173-74; City of Weatherford v. Catron, 83 S.W.3d
261, 269 (Tex.App.-Fort Worth 2002, no pet.); Duvall, 82 S.W.3d at 482. In the record
below, Phelan alludes to having reported Norville's alleged misuse of Texas Tech property
and personnel to the campus EEOC office and the Texas Society of Professional
Engineers. The Court notes that Phelan's report to these entities could not possibly supply
the basis for a good faith reporting because they informed him they could not assist him. 
See Vela, 186 S.W.3d at 54. Moreover, his report of an alleged ethical violation to the
Engineering Society was not a report of "a violation of law." See Harris County Precinct
Four Constable Dep't, 922 S.W.2d at 955-56. On deposition, Phelan stated he was not
sure whether he reported the misuse of Texas Tech property to the Texas Tech Police; he
only reported the assault to Texas Tech Police because he did not have evidence of
misuse; he did not tell Texas Tech Police about the alleged excessive consulting; he may
have reported the alleged misuse to the Lubbock County District Attorney or Lubbock
Police; and the only illegal activity he reported to the police was the alleged assault. This
testimony, at best, represents less than a scintilla of evidence in support of any assertion
that he reported the misuse of Texas Tech property to anyone other than Eibeck and
Kiesling, and as such raises no genuine issue of material fact. 

 Phelan is correct that, in determining whether a violation of law was reported to an
appropriate law enforcement authority, we look to the entity that employs the individual who
receives the report. Robertson County v. Wymola, 17 S.W.3d 335, 340 (Tex.App.-Austin
2000, pet. denied). Nevertheless, Wymola offers Phelan no support. In Wymola, the court
concluded the report was made to an appropriate law enforcement authority because the
employee reported the violation of law to her supervisor who also worked for the sheriff's
department. Id. at 342. Here, Phelan has produced no evidence to suggest that Texas
Tech had any authority similar to the sheriff's department in Wymola. (5) 

 Accordingly, we hold, as a matter of law, Phelan's complaint to Eibeck and Kiesling
that Norville was misusing Texas Tech personnel and property did not constitute a good
faith report of a violation of law to an appropriate law enforcement authority under the Act. 
Point of error two is overruled.

Points of Error Three and Four


 By his third and fourth points of error, Phelan contends the trial court erred in
granting Texas Tech's motion for summary judgment because Texas Tech denied his due
process rights and liberty interest in violation of Article 1 § 19 of the Texas Constitution. 
Texas Tech contends there are no triable issues of fact related to Phelan's claims and that
it is entitled to summary judgment as a matter of law. Specifically, Texas Tech contends
there is either no cause of action as a matter of law or there is no causal connection
between the alleged acts of Texas Tech and Phelan's claims of damage.

Due Process Claims

 Phelan asserts the trial court erred in granting summary judgment in Texas Tech's 
favor on his due process claims. In support, Phelan contends he could not be non-reappointed except for cause following a hearing because he had acquired tenure and,
alternatively, had acquired de facto tenure or tenure by default. 

 The due course clause of the Texas Constitution provides:

 No citizen of this State shall be deprived of life, liberty, property, privileges
or immunities, or in any manner disfranchised, except by the due course of
the law of the land.


Tex. Const. art. I, § 19. 


 It is well settled that although the due process clause of the Fourteenth Amendment
and the due course of law provision of the Texas Constitution slightly differ in their
language, the differences "are without meaningful distinction." University of Tex. Med. Sch.
v. Than, 901 S.W.2d 926, 929 (Tex. 1995); Hartford Casualty Insurance Company v. State,
159 S.W.3d 212, 216 (Tex.App.-Austin 2005, pet. denied). Although Texas courts are not
bound by federal due process jurisprudence, Texas courts traditionally follow federal due
process interpretations and consider federal decisions on these matters persuasive
authority. Than, 901 S.W.2d at 929.

 A constitutionally protected property interest is defined as an individual entitlement
grounded in state law which cannot be removed except for cause. County of Dallas v.
Wiland, 124 S.W.3d 390, 396 (Tex.App.-Dallas 2003, no pet.). To have a benefit or
property interest protected by procedural due process, one must have a legitimate claim
of entitlement rather than an abstract need, desire, or unilateral expectation. See Board
of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d
548 (1972); Govant v. Houston Community College System, 72 S.W.3d 69, 76
(Tex.App.-Houston [14th Dist.] 2002, no pet.). Property interests are not constitutionally
created; rather they are created and their dimensions are defined by existing rules or
understandings that stem from an independent source, such as state law, rules, or
mutually explicit understandings that secure certain benefits and support claims of
entitlement to those benefits. Tarrant County v. Van Sickle, 98 S.W.3d 358, 363
(Tex.App.-Fort Worth 2003, pet. denied); Martine v. Board of Regents, State Senior
Colleges of Texas, 578 S.W.2d 465, 470 (Tex.Civ.App.-Tyler 1979), appeal after remand,
607 S.W.2d 638 (Tex.Civ.App.-Austin 1980, writ ref'd n.r.e.). 

 To have a property interest in public employment, one must prove that he or she has
a legitimate claim of entitlement to continued employment. Jordan v. Jefferson County,
153 S.W.3d 670, 674 (Tex.App.-Amarillo 2004, pet. denied). In analyzing a procedural
due process claim, we apply a two-part test to (1) determine whether the plaintiff has a
property or liberty interest entitled to procedural due process, and (2) if so, to determine
what process is due to sufficiently protect that interest. Hartford, 159 S.W.3d at 216;
County of Dallas, 124 S.W.3d at 396.

 In Texas, continued employment generally depends upon the will of the employer. 
Jordan, 153 S.W.3d at 674. Unless there is specific agreement to the contrary that
dictates otherwise, an employee can be released for "good reason, bad reason, or no
reason." Id., citing Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex.
1998). Moreover, if there is no substantive limitation on a university's power to remove a
faculty member, the faculty member can be terminated without notice or a hearing because
no property interest exists which implicates the protections of the federal or Texas
Constitutions. McCartney, M.D. v. May, M.D., 50 S.W.3d 599, 607 (Tex.App.-Amarillo
2001, no pet.). Therefore, whether Phelan lacks formal contractual or tenure security in
continued employment at Texas Tech is highly relevant to his procedural due process
claim. See Perry v. Sindermann, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570
(1972). 

 The general rule is that a faculty member's employment is subject to their contract
and the school's operational policies. Bowen v. Calallen Independent School District, 603
S.W.2d 229, 233 (Tex.Civ.App.-Corpus Christi 1980, writ ref'd n.r.e.). The mere showing
that a faculty member was not rehired in a particular job, without more, does not amount
to a showing of a loss of either property or a liberty interest. Sindermann, 408 U.S. at 599,
92 S.Ct. at 2698. Likewise, the mere fact that a faculty member has been repeatedly
rehired for consecutive one year terms does not constitute evidence that the school had
impliedly contracted with him or her to renew their contract every year. Hix v. Tuloso-Midway Independent School District, 489 S.W.2d 706, 710 (Tex.Civ.App.-Corpus Christi
1973, writ ref'd n.r.e.).

 Per Texas Tech's Regents' Rules, Faculty Handbook and Operating Procedures,
Phelan had not received tenure prior to his non-reappointment in May 2005. The Board
of Regents had not admitted him to tenure, and he had served only four years of the
maximum probationary period of six years. Moreover, Phelan had served in a special full-time appointment as a Research Assistant Professor for only three years, 1998-2001, and
needed three more years before he attained an employment status requiring dismissal only
for cause.

 Alternatively, Phelan contends he attained de facto tenure and/or tenure by default
because he had been employed by Texas Tech for seven years under circumstances that
gave him an expectation that he would receive tenure in 2005. However, where a
university has published written procedures governing tenure such as Texas Tech's
Regents' Rules, Faculty Handbook and Operating Procedures, the legitimacy of a claim
to tenure acquired outside the procedures is vitiated because there is no basis for
mutuality. Unless otherwise provided for in university rules, there is no "common law"
tenure, de facto tenure, or tenure by default. LaVerne v. University of Texas System, 611
F.Supp. 66, 69 (S.D. Tex. 1985). Because de facto tenure and tenure by default would be
acquired outside Texas Tech's procedures, they fail as a matter of law. (6) 

 Phelan was an at-will employee employed pursuant to annual contracts that expired
by their own terms. See Turner v. Joshua Independent School District, 583 S.W.2d 939,
942 (Tex.Civ.App.-Waco 1979, no writ). Under Texas Tech's rules, he was entitled to a
notice of non-reappointment by issuance of a terminal contract for one academic year. He
received the required notice on non-reappointment and, at his request, review by a faculty
committee. Phelan claims that Texas Tech did not follow its procedures related to his
appeal of non-reappointment to the Tenure Advisory Committee. He asserts that it was
improper for members of the Committee, or for non-members of the Committee, to serve
on the faculty Committee assembled to hear his appeal of non-reappointment and for
Eibeck's draft response to his grievance to be distributed at a Committee meeting. We
disagree. The Regents' Rules expressly permit members of the Tenure Advisory
Committee, or their appointees, to serve on the faculty committee. And, although Texas
Tech's grievance procedure indicates that the procedure does not apply to grievances
related to non-reappointment and termination, there is no reciprocal provision regarding
appeals of non-reappointment. In fact, the Committee sets its own rules and can accept,
or reject, any oral or written statements. In short, there is no prohibition, as Phelan
contends, against the Committee considering any evidence including Eibeck's draft
response to Phelan's grievance. We also note that Phelan cites to no authority, legal or
otherwise, in support of his contention that he was entitled to notice of the time and place
of the meeting where the Committee considered his appeal, a transcription of the meeting,
or a list of what was considered by the Committee in reaching its decision to affirm his non-reappointment. Neither has he cited any authority authorizing a non-reappointee to appeal
the composition of the Committee appointed to consider his appeal. The Committee
considered his submission with other evidence and upheld his non-reappointment.

 Phelan also contends that because Texas Tech established some procedure for
review of his non-reappointment, it intended to elevate his status to something more than
an at-will employee. Simply because Texas Tech provided some procedure for faculty that
are non-reappointed does not mean that it intended to expand by implication the
employment rights of a faculty member who is non-reappointed beyond those set forth in
its Regents' Rules. See Wells v. Hico Independent School District, 736 F.2d 243, 254-55
(5th Cir. 1984), cert. dism'd, 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985). These
procedures relate to only non-reappointment, not contract renewal or tenure. Id. 
Moreover, Texas does not recognize implied teaching contracts. See Burris v. Willis
Independent School District, Inc., 713 F.2d 1087, 1090-91 (5th Cir. 1983). 

 Phelan's non-reappointment was not tantamount to dismissal or discharge because
his contract for the specified time of a year automatically expired at the end of its term. 
See Bowen, 603 S.W.2d at 235. If Phelan had any expectation that he would be renewed
for an additional year, or years, his expectation was unilateral. See Govant, 72 S.W.3d at
76; Hix, 489 S.W.2d at 711. Moreover, no cognizable claim exists because Texas Tech
paid Phelan his full salary under his existing contract. Kinsey v. Salado Independent
School District, 950 F.2d 988, 997 (5th Cir. 1992), cert. dism'd, 504 U.S. 941, 112 S.Ct.
2275, 119 L.Ed.2d 201 (1992). Thus, Phelan's due process claims fail as a matter of law
and his third point of error is overruled.

Liberty Interest Claim

 Phelan asserts the trial court erred in granting summary judgment in Texas Tech's
favor on his claim for deprivation of a liberty interest. In support, Phelan contends his good
name, reputation, honor, or integrity is at stake (1) because of a Texas Tech
interdepartmental e-mail sent in May 2005 from Eibeck to Norville containing indirect
references to him that may have referred to him as a "creep" and may have described him
as exhibiting "dysfunctional behavior"; (2) a second Texas Tech interdepartmental e-mail
sent in August 2005 to approximately eight Texas Tech employees indicating Phelan had
exhibited "hostile behavior"; and (3) Norville's communication to Phelan in a public
restaurant that he would be terminated if he did not resign. 

 The law is clear in the employment context that a liberty interest is affected only
when a plaintiff is terminated for reasons which were false, stigmatizing, and published,
such that his standing in the community is seriously damaged or stigmatized to the extent
he cannot seek or obtain other employment. Roth, 408 U.S. at 573-75, 92 S.Ct. at 2707;
Jones v. Houston Independent School District, 805 F.Supp. 476, 478 (S.D. Tex. 1992),
aff'd, 979 F.2d 1004 (5th Cir. 1992). For a charge to be stigmatizing, it must be worse than
merely adverse; it must be such as would give rise to a badge of infamy, public scorn, or
the like. Wells v. Hico Independent School District, 736 F.2d 243, 256 n.16 (5th Cir. 1984),
cert. dism'd, 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985). The public employer
must make concrete, false assertions of wrongdoing on the part of the employee; 
Blackburn v. City of Marshall, 42 F.3d 925, 936 (5th Cir. 1995) and, the infringement of
employee's liberty interest can be found only where the governmental agency has made
or is likely to make the allegedly stigmatizing charges public in any official or intentional
manner, other than in connection with the defense of legal action. Kelleher v. Flawn, 761
F.2d 1079, 1087-88 (5th Cir. 1985). 

 To establish a claim for the deprivation of a liberty interest, a plaintiff must prove the
following: (1) that the plaintiff was discharged; (2) stigmatizing or defamatory charges were
made against the plaintiff in connection with the discharge; (3) that the charges were false;
(4) that no meaningful public hearing was conducted pre-discharge; (5) that the charges
were made public; (6) that plaintiff requested a hearing in which to clear his name; and (6)
plaintiff's request was denied. Rosenstein v. City of Dallas, 876 F.2d 392, 395-96 (5th Cir.
1990).

 Phelan contends Texas Tech's statements are damaging to his reputation in the
academic community. If not refuted, Phelan claims any possibility of his obtaining future
employment in a major university will be foreclosed and future advancement in his present
position may also be hindered. Neither harm to reputation nor the consequent impairment
of future employment opportunities are constitutionally cognizable injuries. D. Vander Zee
v. Reno, 73 F.3d 1365, 1369 (5th Cir. 1996), citing Siegert v. Gilley, 500 U.S. 226, 233-35,
111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991). Neither is the loss of Phelan's freedom of
choice in the job market a cognizable constitutional injury. D. Vander Zee, 73 F.3d at
1369-70. 

 Phelan fails to produce any competent summary judgment evidence that these
statements have seriously damaged his standing and associations in the community or
impaired his ability to obtain other employment. (7) In fact, within weeks of attending a
conference in Boston following his non-reappointment, Phelan accepted a position with a
prestigious engineering firm making substantially more money while working fewer hours. 
We do agree that Phelan's non-reappointment might make him less attractive to other
employers, but it would "stretch the concept too far to suggest that a person is deprived of
'liberty' when he simply is not rehired in one job but remains as free as before to seek
another." Roth, 408 U.S. at 576, 92 S.Ct. at 2708. See also Perry v. Sindermann, 408
U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (U.S. 1972).

 Phelan's constitutional claim also fails as a matter of law because the statements
contained in the e-mails were not stigmatizing. At the very least, a statement is not
stigmatizing if it is not defamatory. Rosenstein, 896 F.2d at 395-96. To be actionable, the
stigmatizing statements must be statements of fact, not opinion, and accuse the employee
of wrongdoing; Blackburn, 42 F.3d at 936, i.e., expose the employee to public hatred,
contempt, ridicule, or financial injury. Alaniz v. Hoyt, 105 S.W.3d 330, 345
(Tex.App.-Corpus Christi 2005, no pet.). However, statements may be false, abusive,
unpleasant, or objectionable to the employee and still not be defamatory in light of the
surrounding circumstances. MKC Energy Investments, Inc. v. Sheldon, 182 S.W.3d 372,
377 (Tex.App.-Beaumont 2005, no pet.).

 The question of whether an alleged defamatory statement is reasonably capable of
a defamatory meaning is a question of law. Musser v. Smith Protective Services, Inc., 723
S.W.2d 653, 654 (Tex. 1987). We construe the alleged defamatory statement as a whole,
in light of the surrounding circumstances, based upon how a person of ordinary intelligence
would perceive the statement. Turner v. KTRK Television, Inc., 38 S.W.3d 103, 114 (Tex.
2000). Bearing in mind that an expression of opinion is protected free speech, we must
also determine whether the statements in question are merely expressions of opinion or
actionable assertions of fact. Simmons v. Ware, 920 S.W.2d 438, 446 (Tex.App.-Amarillo
1996, no writ). If the complained-of statements are not reasonably capable of defamatory
meaning or are protected opinion, summary judgment was proper. See Double Diamond,
Inc. v. Van Tyne, 109 S.W.3d 848, 854 (Tex.App.-Dallas 2003, no pet.).

 Reading Eibeck's May 19 e-mail as a whole in light of the surrounding
circumstances, we do not find that her indirect reference to Phelan as a "creep" or her
description of his behavior as "dysfunctional" to be defamatory. In the e-mail, Eibeck is
critiquing a draft document being written by Norville. Her statements are: (1) "Too much
of the document sounds like 'I couldn't get along with the creep so I am firing him" and (2)
"Make it clear that 1. He is minimally performing on the job with examples and then 2. His
actions reflect dysfunctional behavior with examples." Both statements are indirect
references to the behavior described and to Phelan. 

 Moreover, the descriptive terms on which Phelan bases his claim are opinions, not
fact. (8)
 See Musser, 723 S.W.2d at 655; Shaw v. Palmer, 197 S.W.3d 854, 857-58
(Tex.App.-Dallas 2006, pet. denied); Roberts v. Davis, 160 S.W.3d 256, 262
(Tex.App.-Texarkana 2005, pet. denied); Columbia Valley Reg. Med. Ctr. v. Bannert, 112
S.W.3d 193, 199 (Tex.App.-Corpus Christi 2003, no pet.). Because these statements do
not imply an assertion of fact, but rather were used in the popular sense as opposed to a
clinical sense, we conclude that the statements were expressions of opinion, not
statements of fact. See Shaw, 197 S.W.3d at 858. We also note Phelan produced no
evidence these statements were stigmatizing other than the statements themselves
coupled with his legal conclusion--the statements were stigmatizing. Accordingly, we find
these interdepartmental e-mail statements were not stigmatizing as a matter of law.

 Neither has Phelan produced competent summary judgment evidence to indicate
that Texas Tech has disclosed or is likely to disclose any document or communication
related to his non-reappointment to the public in any official or intentional manner. There
is no evidence the interdepartmental e-mails were forwarded or released outside Texas
Tech. There is also no evidence that the e-mail from the Texas Tech employee to a third
party was forwarded or released to anyone beyond the recipient, or that the
communication was an official or intentional disclosure by Texas Tech. Under these
circumstances, there was no publication. See Hughes v. City of Garland, 204 F.3d 223,
227-28 (5th Cir. 2000). 

 Finally, even if Norville broadcasted in the restaurant the fact that Phelan resign or
be terminated, the statement was true, or at the very least, substantially true. Simmons,
920 S.W.2d at 447. In addition, because the fact of nonrenewal or termination of a non-tenured public employee by itself is not actionable as a deprivation of a liberty interest, it
follows that a disclosure by the public employer that the employee has been nonrenewed
or terminated by itself is not actionable either. Accordingly, Phelan's claim of deprivation
of a liberty interest fails as a matter of law and his fourth point of error is overruled.

 Conclusion


 Having overruled Phelan's points of error, the trial court's judgment is affirmed.



 Patrick A. Pirtle

 Justice


1. Tex. Gov't. Code Ann. §§ 554.001-.009 (Vernon 2004).
2. Though an employee need not identify a specific law when making a report, and
need not establish an actual violation of law, there must be some law prohibiting the
complained of conduct to give rise to a Whistleblower claim. LLanes v. Corpus Christi
Independent School District, 64 S.W.3d 638, 642-43 (Tex.App.-Corpus Christi 2001, pet.
denied) ("[o]therwise, every complaint, grievance and misbehavior could support a claim
under the Act."). 
3. The same standards and principles of evidence that are applicable in a trial on the
merits are equally applicable in a summary judgment proceeding. Ho v. University of
Texas at Arlington, 984 S.W.2d 672, 680 (Tex.App.-Amarillo 1998, pet. denied). See also
68 Tex. Jur. 3D Summary Judgment § 30 (2003).
4. Phelan does not identify any specific statute, ordinance, or rule adopted pursuant
to a statute or ordinance that he asserts was violated by Norville related to misuse of Texas
Tech property. Nevertheless, Phelan's pleadings may be interpreted to allege a criminal
offense, i.e. abuse of official capacity. See Tex. Penal Code Ann. § 39.02 (Vernon 2003). 
However, we note that, even if Phelan had pleaded a criminal violation such as abuse of
official capacity, the result would be the same. Phelan has provided no evidence that
Ebeck, Kiesling, or anyone else at Texas Tech had any authority to regulate under,
enforce, investigate, or prosecute violations of the Penal Code.
5. Neither does Housing Authority of the City of El Paso v. Rangel, 131 S.W.3d 542
(Tex.App.-El Paso 2004, no pet.), offer Phelan any support. In Rangel, the employee
reported the illegal activity to HUD and the Office of Inspector General. The trial court
found and the court of appeals agreed that HUD was an appropriate law enforcement
agency because the alleged misconduct involved activities which HUD usually and
customarily investigated. Id. at 549-50. Furthermore, the OIG and its agents are
empowered to conduct criminal investigations, issue subpoenas, carry firearms, make
warrantless arrests, obtain and execute warrants for arrest, and searches and seizures of
evidence. 5 U.S.C. App. 3 § 6 (2007). 
6. Dr. McDonald's representation that he essentially considered Phelan to be on a
tenure track placed no limitation on Phelan's at-will employment. See Claus v. Gyorkey,
674 F.2d 427, 434-35 (5th Cir. 1982). That Dr. McDonald gave Phelan a copy of Texas
Tech's tenure policies and procedures and invited him to a meeting with three recent hires
as Assistant Professors is also of no consequence. Texas Tech's tenure policies also
established Phelan's status as a non-tenure track employee. Finally, that Phelan was
assigned teaching duties early after receiving his special full-time appointment as a
Research Assistant Professor is not indicative that he was being treated as a tenure track
employee. His appointment letter indicated that his position as a Research Assistant
Professor might entail teaching, and Phelan's deposition testimony indicates that it is not
unusual for non-tenure track employees to teach classes. 
7. In his Reply Brief, Phelan points to a single instance where he applied for, but did
not receive a university faculty position while at Texas Tech. However, he offers no more
than speculation in support of the notion his non-reappointment somehow affected the
other university's decision not to offer him a position. See Bradford v. Tarrant County
Junior College District, 492 F.2d 133, 135 n.3 (5th Cir. 1974); Cogdill v. Comal Independent
School District, 630 F.Supp. 47, 49-50 (W.D.Tex. 1985). 
8. In the August 2005 e-mail from Eibeck to other Texas Tech employees, Eibeck
announced Phelan's resignation and requested that his personal e-mail account at Texas
Tech be disabled at the end of his last day. She stated: "[h]e has threatened lawsuits and
has sent accusatory emails to all faculty and staff in the department. It is certainly possible
that he would use his e-raider account to continue this hostile behavior as well as cause
harm to the institution." We also note there can be no causal connection between this e-mail and Phelan's non-reappointment because Phelan was non-reappointed in May 2005.